802 So.2d 315 (2001)
Evelyn OWENS and John Owens, Petitioners,
v.
PUBLIX SUPERMARKETS, INC., Respondent.
Elvia Soriano and Angel Soriano, Petitioners,
v.
B & B Cash Grocery Stores, Inc., etc., Respondent.
Nos. SC95667, SC96235.
Supreme Court of Florida.
November 15, 2001.
Rehearing Denied December 14, 2001.
*316 B.C. Muszynski, Kissimmee, Florida; and Bambi G. Blum, and Simon & Dondero, P.A., Miami, FL, for Petitioners.
*317 Michael V. Hammond and Richard S. Womble of Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Orlando, FL, for Respondents.
Joseph H. Williams of Troutman, Williams, Irvin, Green & Helms, P.A., Winter Park, FL, for the Academy of Florida Trial Lawyers, Amicus Curiae, in support of Elvira Soriano, et al., Petitioners.
PARIENTE, J.
We have for review Owens v. Publix Supermarkets, Inc., 729 So.2d 449 (Fla. 5th DCA 1999) (en banc), and Soriano v. B & B Cash Grocery Stores, Inc., 757 So.2d 514 (Fla. 4th DCA 1999), based on express and direct conflict with Teate v. Winn-Dixie Stores, Inc., 524 So.2d 1060 (Fla. 3d DCA 1988), on the issue of whether, in a slip and fall case, the condition of a transitory foreign substance[1] is itself sufficient to establish constructive knowledge. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.[2] For the reasons that follow, we hold that where a plaintiff slips and falls on a transitory foreign substance in a defendant's business premises, once the plaintiff establishes that he or she fell as a result of that transitory foreign substance, the burden shifts to the defendant to produce evidence that it exercised reasonable care under the circumstances.

FACTS

1. Owens

Evelyn Owens ("Owens"), along with her husband John Owens, brought this personal injury action against Publix Supermarkets, Inc. ("Publix"). Owens was a part-time employee in the Publix bakery. On March 4, 1995, after she completed her work for the day, Owens "clocked out" but stayed at Publix to do some grocery shopping. While walking down an aisle, Owens slipped and fell on a discolored piece of banana lying on the floor.
At trial, Owens did not present any direct evidence of the length of time the piece of banana was on the floor. In fact, Owens testified that she did not see the substance that had caused her to fall. Owens did, however, present the testimony of Alma Jean Ross, another shopper in the store, who testified that she was walking down the chip and bread aisle at the same time as Owens and that Owens had slipped on "a piece of banana" without the peel, which was about an inch or longer and "kind of mushed ... where she hit it ... kind of squashed down." When asked if the banana was discolored, Ross responded, "Very much, uh-huh. It wasn't black, but it was dark." Ross further testified that she had been at Publix "[a]bout three or four minutes" before encountering Owens, but admitted she had no knowledge of how long the banana had been on the floor.
As to the maintenance and inspection of the floors, there was evidence that it was the responsibility of Publix employees to look out for items on the floor and that managers would walk the store, "inspecting everything." However, Publix did not keep inspection records and there was no evidence presented as to when the particular *318 aisle was last inspected.[3]
After Owens presented her case-in-chief, Publix moved for a directed verdict on liability, arguing that Owens failed to present any evidence that Publix had actual or constructive knowledge that the banana piece was on the floor. Finding that the evidence of the condition of the banana was insufficient to establish a basis for Publix's liability, the trial court directed a verdict and entered final judgment for Publix.
On appeal, a panel of the Fifth District reversed the granting of the directed verdict, see Owens v. Publix Supermarkets, Inc., 23 Fla. L. Weekly D2655 (Fla. 5th DCA Dec.4, 1998), reh'g en banc granted and opinion withdrawn, 729 So.2d at 449, but upon rehearing en banc, the Fifth District affirmed the trial court's directed verdict in favor of Publix. In affirming the trial court, the Fifth District framed the issue in the case as follows: "Does the fact that a piece of discolored banana is found on the floor give rise to an inference that the banana fragment had been there long enough to give this critical constructive knowledge?" Owens, 729 So.2d at 449. The Fifth District answered the question by explaining, "it depends on the other circumstances of the case." Id. Based upon the other circumstances in this particular case, the Fifth District concluded that because at least two theories existed as to how the banana peel got on the floor, it was the plaintiff's obligation to prove that the aging occurred on the floor. See id. at 450. The Fifth District held that to justify the inference that Publix had constructive knowledge of the condition,
we would have to assume that the aging of the banana fragment occurred on the floor of the market and not in the store's fruit bin from which it was taken by a customer and a portion given to an infant being pushed in a shopping cart who dropped it on the floor shortly before plaintiff came along. Although either possibility exists, since it is plaintiff's obligation, in order to show constructive knowledge, to prove that the aging occurred on the floor, the directed verdict was proper.
Id. at 450.
In reaching this result, the Fifth District distinguished our opinion in Montgomery v. Florida Jitney Jungle Stores, Inc., 281 So.2d 302 (Fla.1973), reasoning that the plaintiff in Montgomery, who slipped and fell on a collard leaf was able
to present additional circumstances to establish the span of time the leaf had been on the floor. These additional circumstances were: (1) Plaintiff and her husband had been in the area of the fall for fifteen minutes prior to the accident; (2) No other shoppers were around the area where she fell; (3) No one swept the floor during that period; (4) During this period, two store employees were in the area; (5) Not only was the leaf wilted but it was also "dirty looking."
Owens, 729 So.2d at 449-50.
In a dissenting opinion, Judge Sharp disagreed with the majority that our decision in Montgomery necessarily stood for the proposition that additional circumstances other than the aged condition of the foreign substance were required in order to survive a directed verdict or summary judgment motion. See id. at 452 (Sharp, J., dissenting). Judge Sharp concluded *319 that in Owens, the aged food item or its deteriorated condition was sufficient evidence to create a jury issue on constructive notice from which a jury could find that the "offending piece of banana" had been on the floor of the supermarket a sufficiently long period of time so that Publix, in its capacity as owner-operator, should have discovered it and cleaned it up. See id. at 452 (Sharp, J., dissenting).

2. Soriano

Like Evelyn Owens, Elvia Soriano also injured herself when she slipped and fell on a discolored piece of banana in a grocery store. See Soriano, 757 So.2d at 515-16. As stated in the Fourth District's opinion:
The store employee who helped Mrs. Soriano to her feet took a piece of banana peel off her shoe. Mrs. Soriano described the piece of peel as being brown with very little yellow in color.
The store manager testified that the store tried not to sell brown bananas, as customers generally do not like to buy bananas after they turn brown. Mrs. Soriano acknowledged, however, that the store did sell brown bananas with skin like the piece on which she slipped.
Id. at 515.
At trial, Jose Alvarez, the former store manager of B & B Cash Grocery Store ("B & B") testified that the store kept daily inspection reports "to remind us to check the store on an hourly basis." Nevertheless, when asked if the store in general was swept hourly, Alvarez replied, "To be honest, no. We try to do it but, no. We tried to sweep as many times as we could." Alvarez conceded that no one was assigned the duty to sweep the floors at a certain time every day, and that all of the daily inspection reports were completed at one time. He admitted that the reports, which indicated that someone went around inspecting at a specific time, were false. Alvarez further stated that he was aware that these inspection reports were being falsified, that everyone at the management level of the store knew about it, and that an assistant manager who came from another store told him that it was done that way in every store in which he had worked. Moreover, Alvarez conceded that there were no sweeping records for the day of Soriano's accident.
In addition, Alvarez testified that customers "all the time" would "partake of the food in the store before they get to the cash registers." He also admitted that on occasion customers would eat the fruit that was for sale in the store and on occasion customers would drop the food they were eating.
After the close of Soriano's case, the trial court directed a verdict for B & B, concluding that the evidence was insufficient to show actual or constructive notice. In affirming the granting of a directed verdict, the Fourth District adopted the reasoning of Owens that "in order to show constructive knowledge, the plaintiff had the obligation to prove that the aging occurred on the floor." Soriano, 757 So.2d at 516. The Fourth District rejected Soriano's contention that the circumstantial evidence was sufficient for the jury to infer constructive notice:
We conclude that the circumstantial evidence in this case required the impermissible stacking of inferences to establish constructive notice. As such, we cannot infer, as Appellant contends, that the supermarket only sells yellow bananas, that it must have been yellow when it reached the floor, and that it sat on the floor until it turned brown. The inference is just as likely in such a case that someone had purchased the brown banana and dropped it on the floor in that condition, or that someone brought the brown banana into the grocery store, *320 as there was competent evidence that customers of the store would often eat food while in the store and drop debris on the floor.
Id. The Fourth District determined that there was "no additional evidence to establish that the banana peel was on the floor for any length of time, such as cart tracks, foot prints, dirt, or even grit." Id. Without this additional evidence, the Fourth District concluded, "we cannot infer that the foreign substance had been on the floor for a sufficient length of time to charge B & B with constructive knowledge." Id.
As to Soriano's additional contention that there was evidence that B & B employees had failed to fill out inspection reports and sweep on a regular basis, the Fourth District, relying on Rowe v. Winn-Dixie Stores, Inc., 714 So.2d 1180 (Fla. 1st DCA 1998), held that it would not apply a theory of negligent mode of operation as "an alternative to requiring actual or constructive notice where injuries result from slipping on a foreign substance in a market setting." Id. at 516-17.

ANALYSIS

A. Florida's Slip and Fall Law

1. Actual or Constructive Notice Requirement Related to Transitory Foreign Substances
All premises owners owe a duty to their invitees to exercise reasonable care to maintain their premises in a safe condition. See, e.g., Everett v. Restaurant & Catering Corp., 738 So.2d 1015, 1016 (Fla. 2d DCA 1999). Despite this general proposition, when a person slips and falls on a transitory foreign substance, the rule has developed that the injured person must prove that the premises owner had actual knowledge or constructive knowledge of the dangerous condition "in that the condition existed for such a length of time that in the exercise of ordinary care, the premises owner should have known of it and taken action to remedy it." Colon v. Outback Steakhouse of Florida, Inc., 721 So.2d 769, 771 (Fla. 3d DCA 1998).[4] Constructive knowledge may be established by circumstantial evidence showing that: (1) "the dangerous condition existed for such a length of time that in the exercise of ordinary care, the premises owner should have known of the condition;" or (2) "the condition occurred with regularity and was therefore foreseeable." Brooks v. Phillip Watts Enter., Inc., 560 So.2d 339, 341 (Fla. 1st DCA 1990). In the latter category, evidence of recurring or ongoing problems that could have resulted from operational negligence or negligent maintenance becomes relevant to the issue of foreseeability of a dangerous condition. See generally Wal-Mart Stores, Inc. v. Reggie, 714 So.2d 601, 603 (Fla. 4th DCA 1998); Nance v. Winn Dixie Stores, Inc., 436 So.2d 1075, 1076 (Fla. 3d DCA 1983).
In both Owens and Soriano, the appellate courts determined that the aging condition of the banana alone was insufficient to survive a directed verdict because the aging appearance, without more, was insufficient to show the storeowners' constructive knowledge. The last time this Court addressed the issue of the quantum of circumstantial evidence sufficient to create a jury issue on constructive notice was nearly thirty years ago in Montgomery.
In Montgomery, this Court upheld a jury verdict for the plaintiff where the *321 plaintiff presented evidence that she had been in the area of the fall for fifteen minutes before falling; no other shoppers were in the area when she fell; no employee swept the floor while she was there; two employees were nearby when the accident occurred; the collard leaf upon which she slipped was old, wilted and dirty looking; and water was on the floor where she fell. 281 So.2d at 303. As Judge Sharp correctly pointed out in her dissent in Owens, we did not determine in Montgomery whether the condition of the collard leaf alone would have been sufficient to establish constructive notice of a dangerous condition. Owens, 729 So.2d at 451 (Sharp, J. dissenting). Instead, we noted that constructive notice "may be proved, like any fact, by circumstantial evidence." Montgomery, 281 So.2d at 304. We stated that "[s]ince there was a conflict in the evidence, the trial court properly submitted the matter to the jury." Id. at 303.
Since Montgomery, Florida's appellate courts have struggled to determine whether in a given case sufficient evidence exists to create a jury question on the issue of constructive notice. Depending on the description of the transitory foreign substance, some appellate courts have concluded that the appearance of the transitory foreign substance may in itself be sufficient to create a jury question on constructive notice. See Ramey v. Winn Dixie Montgomery, Inc., 710 So.2d 191, 192-93 (Fla. 1st DCA 1998) (partially melted butter with lumps in it); Woods v. Winn Dixie Stores, Inc., 621 So.2d 710, 711 (Fla. 3d DCA 1993) (unidentified substance described as "very dirty," "trampled," "containing skid marks, scuff marks," and "chewed up"); Ress v. X-tra Super Food Ctrs., Inc., 616 So.2d 110, 110-11 (Fla. 4th DCA 1993) (substance that appeared to be sauerkraut was "gunky, dirty and wet and black"); Hodges v. Walsh, 553 So.2d 221, 222 (Fla. 2d DCA 1989) (sticky substance in bowling alley had dried); Washington v. Pic-N-Pay Supermarket, Inc., 453 So.2d 508, 509 (Fla. 4th DCA 1984) (collard green leaves were "old, nasty" and "looked like they had been there for quite a while"); Camina v. Parliament Ins. Co., 417 So.2d 1093, 1094 (Fla. 3d DCA 1982) (ice cream was thawed, dirty, and splattered).
The Third District's decision in Newalk v. Florida Supermarkets, Inc., 610 So.2d 528 (Fla. 3d DCA 1992), illustrates a case where the court concluded that the condition of a transitory foreign substance created a jury question on constructive notice. In Newalk, the court held that testimony that oil spots were on the floor and that the spots appeared old was in itself sufficient for the question of liability to go to the jury. Id. at 529-30. In determining that the trial court correctly denied the supermarket's motion for directed verdict, the court stated:
Newalk's friend's testimony that oil spots were on the floor and that the spots appeared old was as least some evidence indicating the unidentified spots were present for a sufficient length of time for the owners in their exercise of reasonable care to have acted to remedy the condition.
Thus, because the testimony of Newalk's friend was at least some evidence of negligence, we conclude the question of the market's liability properly went to the trier of fact. Here, it was up to the jury to conclude whether the substance had been on the floor for a sufficient length of time that the owner should have known of the condition and corrected the condition regardless of who created it.
Id. at 529-30 (citations omitted).
In contrast, where there was nothing about the description of the substance that *322 would indicate the length of time it was on the floor, courts have precluded the jury from deciding the issue of negligence. See Publix Super Market, Inc. v. Sanchez, 700 So.2d 405, 406 (Fla. 3d DCA 1997) (a piece of cake was on the floor, but there was no evidence as to how long it had been on floor); Wal-Mart Stores, Inc. v. King, 592 So.2d 705, 707 (Fla. 5th DCA 1991) (slippery, oily, clear substance, but no evidence of "signs of age, such as skid marks, smudges, or the like"); Winn-Dixie Stores, Inc. v. Marcotte, 553 So.2d 213, 215 (Fla. 5th DCA 1989) (slippery substance, but no evidence as to how or when it got on the floor, or the length of time it was there before the fall); Winn Dixie Stores, Inc. v. Gaines, 542 So.2d 432, 432 (Fla. 4th DCA 1989) (loose dried rice and beans, but no evidence that they appeared old or were ground into the floor or crushed, and no evidence of broken packages).
In addition, even where there may be something about the transitory foreign substance to indicate its aging or deteriorated condition, some appellate decisions have precluded the jury from resolving the issue of constructive notice. For example, in Bates v. Winn-Dixie Supermarkets, Inc., 182 So.2d 309, 310 (Fla. 2d DCA 1966), the case relied upon by both the Owens and Soriano majorities, the plaintiff slipped on a banana peel and the only evidence of constructive knowledge was that the peel was "dark, over ripe, black, old, and nasty looking." 182 So.2d 309. In affirming summary judgment for the grocery store, the Second District explained:
To infer from the color and condition of the peeling alone that it had been there a sufficient length of time to permit discovery, we would first have to infer that the banana peel was not already black and deteriorated when it reached the defendants' floor. This is the type of "mental gymnastics" prohibited by the [Food Fair Stores v.] Trusell [131 So.2d 730 (Fla.1961)] decision ... since the latter inference, under the circumstances, is not to the exclusion of all other reasonable inferences.
Id. at 311.
Contrary to the Second, Fourth and Fifth Districts, the Third District has held that a jury question was created based on the condition of the transitory foreign substance, even though the plaintiff could not establish to the exclusion of all other reasonable inferences that the condition of the substance resulted from the length of time it was on the floor. See Teate v. Winn-Dixie Stores, Inc., 524 So.2d 1060 (Fla. 3d DCA 1988). In Teate, the Third District held that evidence of the description of the substance was sufficient for the jury to infer constructive knowledge:
Teate presented evidence that there was some water on the floor around the peas. Teate contends that the water was there because the peas had been on the floor for some time and had thawed. The jury could believe this and find that the peas had been on the floor for a sufficient time to put Winn Dixie on notice of the dangerous condition. Winn Dixie counters that the water was a result of "permafrost" or ice crystals on the bag of peas that instantly melted when it hit the floor. The jury could choose to believe this argument, find the peas had fallen perhaps only seconds before the fall, and decide that there was insufficient notice.

Id. at 1061 (emphasis supplied). Thus, the Third District determined that the jury could decide whether the existence of the water around the peas was evidence of the length of time the peas were on the floor, and accordingly, evidence of constructive knowledge. As to the grocery store's argument that the jury was being required *323 to speculate by building one inference on another, the Third District explained:
Since it was established that there was some water on the floor, it was completely within the jury's province to decide why the water was there. The jury needed to draw only one inference from direct evidence to reach a decision as to the defendant's constructive notice of the condition. It was entitled to believe Teate and to select the inference that it did.
Id. (citations omitted). See also Thoma v. Cracker Barrel Old Country Store, Inc., 649 So.2d 277, 279 (Fla. 1st DCA 1995) (the fact that there might be a "plethora" of reasonable inferences other than the inferences raised by appellants creates a jury issue).
Even by broadening the permissible inferences a jury may consider as a result of the condition of the substance, the threshold question of whether a jury issue is created in any given case may still depend on the transitory foreign substance showing some signs of deterioration or aging. Thus, with case law making constructive notice of the dangerous condition the linchpin of liability, an injured person's ability to establish constructive notice is often dependent on the fortuitous circumstance of the observed condition of the substance.

2. Mode of Operation Theory
In contrast to cases that address whether the defendant had constructive notice of the specific transitory foreign substance, we have on a limited basis recognized that, by virtue of the nature of the business or its mode of operation, the requirement of establishing constructive knowledge is altered or eliminated. See Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720, 721 (1948). In Wells, the plaintiff allegedly injured herself when she fell on an empty bottle in the aisle of the grandstand of a dog track. Id. at 720. The dog track moved for a directed verdict, claiming that the plaintiff was unable to establish either constructive or actual notice. In rejecting the position of the defendant, the Court explained:
It is true that such a rule [requiring actual or constructive notice] has been imposed on stores, banks, shops and other business places of that character, but we think a different rule applies to a place of amusement like a race track where patrons go by the thousand on invitation of the proprietors, and are permitted to purchase and drink bottled beverage of different kinds and set the empty bottles anywhere they may find space to place them....
Places of amusement where large crowds congregate are required to keep their premises in reasonably safe condition commensurate with the business conducted. If the owner fails in this, and such failure is the proximate result of injury to one lawfully on the premises, compensatory damages may be recovered if the one injured is not at fault. One operating a place of amusement like a race course where others are invited is charged with a continuous duty to look after the safety of his patrons. Both sanitary and physical safety of its patrons require that receptacles be provided for bottles and that they be so placed.
We do not mean to imply that they are insurers of the safety of their patrons, but we do say that reasonable care as applied to a race track requires a higher degree of diligence than it does when applied to a store, bank or such like place of business.
Id. (citations omitted).
Although this Court has never extended the mode of operation theory to a supermarket or grocery store setting, neither has this Court specifically rejected the mode of operation theory as a permissible *324 theory of liability in these settings. In Carls Markets, Inc. v. Meyer, 69 So.2d 789, 791 (Fla.1953), for example, this Court indicated that the mode of operation principle would extend to a supermarket setting if the issue were properly pled. In that case, we explained that the Wells dog track or public amusement rule might be applicable to a supermarket or grocery store where the creator of a dangerous condition would necessarily know about the condition and therefore be held responsible for his or her own creation. See Carls Markets, 69 So.2d at 791. We explained that in Wells
the peculiar facts made it unnecessary for the plaintiff to meet the burden of establishing actual or constructive notice of a dangerous condition. In that case it was manifest that the defendant was selling bottled drinks, without providing a place for the deposit of empty bottles which could be expected therefore to roll around underfoot and become hazards to the unwary. In other words, the dangerous obstacles were the creations of the defendant who in effect was on notice as soon as the bottled refreshments were sold.
Carls Markets, 69 So.2d at 791. We thus acknowledged that "if the plaintiff's could convince the jury that the dangerous condition was created by persons connected with the store the matter of notice was inconsequential." Id.
Despite this pronouncement, the First District has squarely rejected an extension of the mode of operation theory to supermarkets. See Rowe v. Winn-Dixie Stores, Inc., 714 So.2d 1180, 1181 (Fla. 1st DCA 1998). In a dissenting opinion, Judge Lawrence disagreed, explaining:
The instant case is distinguishable from the usual slip-and-fall case: The defendant, in the usual case, is not charged with creating a hazardous condition, but only with having actual or constructive knowledge that such a condition exists. The Rowes, by contrast, allege that Winn Dixie created the hazardous condition by negligently operating the seafood salad display. The Rowes urge that, despite that it is undisputed that the seafood salad was spilled by a customer, nevertheless Winn Dixie created the risk that such spills would occur by offering food samples without stationing an attendant at the display, and without providing eating utensils, napkins, or any waste receptacle.

Id. at 1182 (Lawrence, J., dissenting) (emphasis supplied). Although no other reported appellate case in Florida has squarely rejected the application of the negligent mode of operation theory to a supermarket, at least two other appellate cases have appeared to severely limit its application. See Publix Super Market, Inc. v. Sanchez, 700 So.2d 405, 406 (Fla. 3d DCA 1997) (store's operation of demonstration table at which pieces of cake were made available for customers to sample was not inherently dangerous and was not being operated in a negligent manner even though at time plaintiff fell the demonstration table was not manned by a Publix employee as was required by Publix store policy); Schaap v. Publix Supermarkets, Inc., 579 So.2d 831, 834 (Fla. 1st DCA 1991) (store's cookie program was not "inherently dangerous" or conducted in a negligent manner).

B. Other Jurisdictions
In contrast to the focus on the constructive notice issue in Florida's premises liability law, courts in other jurisdictions have embraced a variety of different approaches that alter the traditional rules of premises liability. Indeed, "the modern status of the traditional principle includes `a broad trend toward liberalizing the rules *325 restricting recovery by one injured on the premises of another.'" Jackson v. Mart Corp., 251 Kan. 700, 840 P.2d 463, 467 (1992). Although the approaches embraced by the jurisdictions that have modernized the traditional principles of premises liability have varied, certain historical observations and policy considerations have been identified.
As the Supreme Court of Washington has explained: "The predominant theme running through these cases appears to be that modern techniques of merchandising necessitate some modification of the traditional rules of liability." Pimentel v. Roundup Co., 100 Wash.2d 39, 666 P.2d 888, 892 (1983). First, the evolution of modern merchandise marketing techniques, including self-service, have increased the likelihood of spills and breaks occurring.[5] Second, a store adopting the self-service technique should reasonably anticipate certain types of accidents and therefore is already on notice as to those accidents.[6] Third, because the self-service technique allows for lower overhead and greater profits, the businesses that adopt the self-service technique are in a better position to prevent and attend to the risks involved.[7] Fourth, it is unfair to place the burden on the customer to establish actual or constructive notice of the condition on the part of the premises owner or operator when the defendant is in control of its own premises and the evidence on which notice is based.[8]
Based on a variety of these policy considerations, the approaches courts have adopted include a burden-shifting analysis, an application of the mode of operation theory of negligence, and the elimination or modification of the requirement of proving constructive notice of the specific transitory foreign substance. One of the earliest approaches has been to reallocate the burdens of proof by adopting a burden-shifting analysis. In Wollerman v. Grand Union Stores, 47 N.J. 426, 221 A.2d 513 (1966), the New Jersey Supreme Court based its decisions to reallocate the burdens of proof on the superior knowledge that the premises owner has when compared to the knowledge of the plaintiff and the unequal positions of the plaintiff and the premises owner with respect to their access to information about the cause of the accident. That court stated:

The customer is hardly in a position to know precisely which was the neglect. Overall the fair probability is that defendant did less than its duty demanded, in one respect or another. At least the probability is sufficient to permit such an inference in the absence of evidence that defendant did all that a reasonably prudent man would do in the light of the risk of injury his operation entailed. It is just, therefore, to place "the onus of producing evidence upon the party who is possessed of superior knowledge or opportunity for explanation of the causative circumstances."

Id. at 514-15 (emphasis supplied) (quoting Kahalili v. Rosecliff Realty, Inc., 26 N.J. *326 595, 141 A.2d 301, 307 (1958)). In summarizing the various justifications for shifting the burden to storekeepers, the court concluded:
[W]here a substantial risk of injury is implicit in the manner in which a business is conducted, and on the total scene it is fairly probable that the operator is responsible either in creating the hazard or permitting it to arise or to continue, it would be unjust to saddle the plaintiff with the burden of isolating the precise failure. The situation being peculiarly in the defendant's hands, it is fair to call upon the defendant to explain, if he wishes to avoid an inference by the trier of the facts that the fault probably was his.
Id. at 515 (emphasis supplied). See also Bozza v. Vornado, Inc., 42 N.J. 355, 200 A.2d 777, 781 (1964) ("[I]t is appropriate to require defendants to come forward with proof of the measures they took to deal with the probability that litter would fall and accumulate.").
Louisiana also developed its own burden-shifting approach.[9] In so doing, the Louisiana Supreme Court focused on the nature of the operation of self-service stores and how "[n]umerous items displayed upon shelving along the aisles or walkways in self-service stores entice the customers to focus their eyes upon the display rather than on the surface upon which they walk." Kavlich v. Kramer, 315 So.2d 282, 284 (La.1975). The court also explained that the self-service system "increases the risk of harm from objects dropped on the floor by customers and, correspondingly, the duty to minimize the risk by frequent inspections and cleanups." Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486, 488 (La.1976).
Because of these modern-day realities, the Louisiana Supreme Court created a rebuttable presumption of negligence that shifted the burden to the storeowner to prove it was not negligent. In Kavlich, the plaintiff slipped on a "piece of banana about the size of a finger." 315 So.2d at 284. However, as the Court explained:
[The plaintiff] was in no position to know under what circumstances the piece of banana came to rest upon the floor. She was in no position to prove that the piece of banana rested on the floor because the employees of the store were negligent. She has established clearly that the piece of banana was there when she entered the store; that she stepped upon the piece of banana; and that it caused her to slip, fall, and be injured. The burden then shifts to the defendant to go forward with the evidence to exculpate itself from the presumption that it was negligent.

Id. at 285 (emphasis added).
That court enunciated the burden-shifting approach even more explicitly in Gonzales, a case in which the plaintiff slipped on a spill of olive oil about two feet in diameter:
[P]laintiffs established that there was a spill of olive oil about two feet in diameter in the aisle where [the plaintiff] was shopping; that the oil came from a broken bottle near the olive oil shelf; that she did not see the oil spill; that she stepped into the olive oil; and that it caused her to slip, fall, and be injured.
Upon proof of such facts ... the duty of going forward with the evidence to exculpate the store employees from negligence shifts to the store owner. When it appears that a third person dropped *327 the foreign substance, the store owner must establish that periodic inspections made and other protective measures taken were reasonable. Implicit in the decision is a recognition that, in the self-service system, customers are prone to drop objects on the floor and that a customer who slips and falls on such an object is usually in no position to establish how long it has been on the floor.
. . . .
.... If the evidence brought forward establishes that the store owner is free from fault, there can be no liability.
326 So.2d at 488-89 (emphasis added). Thus, rather than requiring the plaintiff to prove how long the olive oil was on the floor, the court placed the burden on the store owner to prove that it took reasonable measures in the form of periodic inspections and other protective measures consistent with the knowledge that this type of risk is foreseeable in a self-service operation. After the decisions in Gonzales and Kavlich, the Louisiana Supreme Court expanded the evidentiary burden placed on the store operator to present evidence "that his employees did not cause the hazard and that he exercised such a degree of care that he would have known under most circumstances of a hazard caused by customers." Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685, 687 (La.1984), see also McCardie v. Wal-Mart Stores, 511 So.2d 1134, 1135-36 (La.1987).
Like the courts in New Jersey and Louisiana, the Colorado Supreme Court also has embraced burden-shifting by recognizing an exception to the notice requirement where "the storekeeper's operating methods `are such that dangerous conditions are continuous or easily foreseeable.'" Safeway Stores, Inc. v. Smith, 658 P.2d 255, 257 (Colo.1983) (quoting Jasko v. F.W. Woolworth Co., 177 Colo. 418, 494 P.2d 839, 840 (1972)). The Colorado Supreme Court held that
the plaintiff establishes a prima facie case of negligence when he presents evidence that the nature of the defendant's business gives rise to a substantial risk of injury to customers from slip-and-fall accident, and that the plaintiff's injury was proximately caused by such an accident within the zone of risk. It is then incumbent upon the defendant to produce evidence that it exercised reasonable care under the circumstances. The ultimate decision whether the defendant exercised such care is to be made by the finder of fact.
Smith, 658 P.2d at 258 (emphasis supplied).
In Smith, the grocery store customer fell after "he stepped on a substance that witnesses described as looking like hand lotion." Id. at 256. The substance was not in an area where the store displayed the item. See id. at 257 n. 3. However, the Colorado Supreme Court cited both the New Jersey Supreme Court cases of Wollerman and Bozza with approval and adopted the New Jersey burden-shifting approach to a self-service supermarket. See Smith 658 P.2d at 257-58. In quoting with approval from the Colorado Court of Appeals opinion, it found that the absence of proof of actual or constructive notice was not critical:
[I]n a self-service grocery operation, the easy access to the merchandise often results in its spillage and breakage. This, along with the fact that a customer's attention understandably is focused on the items displayed rather than on the floor, creates a dangerous condition.
Id. at 257 (footnote omitted). The Colorado Supreme Court noted:
The testimony of the store manager, who had 18½ years of experience in Safe-way stores, supports the court of appeals' *328 statement that spillage occurs frequently in self-service grocery stores. He acknowledged that it is common for food items to be dropped on the floor by customers and not unusual that substances appear on the floor in different aisles than where they are displayed. The evidence here was that the slippery substance was not among the items shelved along the aisle in which the spillage occurred.
Id. at 257 n. 3.
Echoing the sentiments of the New Jersey Supreme Court, the court explained that:
Our holding does not make the operator of a self-service grocery store an insurer against all accidents on the premises. The proprietor is guilty of negligence only if he fails to use reasonable care under the circumstances to discover the foreseeable dangerous condition and to correct it or to warn customers of its existence. We believe, however, that it is unrealistic to require the victim of a fall resulting from a dangerous condition in a self-service grocery store to present evidence of the absence of reasonable care by the storekeeper. The steps the storekeeper took to discover the condition and to correct or warn of it are peculiarly within his own knowledge.

Id. at 258 (emphasis supplied) (citations omitted).
Instead of the burden-shifting analysis, other jurisdictions have adopted a negligent mode of operation theory of liability, which also eliminates the requirement that the plaintiff prove actual or constructive notice of the specific transitory condition. As described by the Arizona Supreme Court:
The "mode-of-operation" rule looks to a business's choice of a particular mode of operation and not events surrounding the plaintiff's accident. Under this rule, the plaintiff is not required to prove notice if the proprietor could reasonably anticipate that hazardous conditions would regularly arise.
Chiara v. Fry's Food Stores of Arizona, Inc., 152 Ariz. 398, 733 P.2d 283, 285 (1987); see also Dumont v. Shaw's Supermarkets, Inc., 664 A.2d 846, 849 (Me.1995) ("Pursuant to the `mode of operation' rule, the conduct of customers is imputed to the store owner by reason of the store owner's choice of customer self-service as a mode of operation."); Pimentel v. Roundup Co., 100 Wash.2d 39, 666 P.2d 888, 893 (1983) ("[Actual or constructive notice] need not be shown ... when the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable."); Gump, 5 P.3d at 434 (adopting the mode of operation theory as "a logical extension of the traditional rule of liability"); Jackson, 840 P.2d at 470 (explaining that the mode of operation theory applies to those accidents caused by a dangerous condition that was a reasonably foreseeable consequence of the mode of operation).
Still other jurisdictions have declined to eliminate entirely the constructive notice requirement, but have reduced the difficulty for the plaintiff to satisfy that requirement. Some jurisdictions, for example, have eliminated the requirement of proof that the condition had existed for an extended period of time before the fall occurred. See generally, Donald M. Zupanec, Annotation, Store or Business Premises Slip and Fall: Modern Status of Rules Requiring Showing of Notice of Proprietor of Transitory Interior Condition Allegedly Causing Plaintiffs Fall, 85 A.L.R.3d 1000, 1006 (1978); Strack v. Great Atlantic & Pacific Tea Co., 35 Wis.2d 51, 150 N.W.2d 361, 364 (1967); see *329 also Forcier v. Grand Union Stores, Inc., 128 Vt. 389, 264 A.2d 796, 799-800 (1970) (explicitly refusing to eliminate the notice requirement or to adopt the burden-shifting analysis, but nonetheless holding that the failure of the defendant to produce evidence that it took reasonable precautions created a jury issue as to whether the defendant exercised reasonable care under the circumstances).
These cases clearly establish the modern jurisprudential trend of departing from the traditional rule of premises liability when a plaintiff slips and falls on a transitory foreign substance. Indeed, courts have explicitly recognized the unfairness of a plaintiff having to establish that the premises owner or operator had constructive notice of the specific transitory foreign substance. This is especially true when the very nature of that business is, like supermarkets, one in which transitory foreign substances regularly fall to the floors and where the risk of customers slipping as a result of these hazards is a foreseeable one. With this overview, we now turn to the appropriate resolution of Owens and Soriano and whether the traditional rules of premises liability should be altered.

C. The Cases on Review
In both Owens and Soriano, a piece of banana was located where it should not have beenon the floor of a supermarket. In each case, the customer slipped and fell and received injuries because of the presence of the banana. Neither Owens nor Soriano was in any position to know the circumstances that placed the piece of banana on the floor prior to her fall; nor was either one of them in any position to prove that the piece of banana was on the floor because of the negligence of store employees. In both cases, the piece of banana appeared to be aging, but the appellate courts concluded that, without more, the plaintiff could not establish that the aging occurred on the floor to the exclusion of all other reasonable inferences.
We reach several conclusions in these cases. First, we conclude that the granting of the directed verdicts was erroneous. In both Owens and Soriano, evidence of the deteriorated condition of the foreign substance provided a sufficient basis for the plaintiff's in these cases to survive a directed verdict. An appellate court reviewing the grant of a directed verdict must view the evidence and all inferences of fact in the light most favorable to the nonmoving party, and can affirm a directed verdict only where no proper view of the evidence could sustain a verdict in favor of the nonmoving party. See Frenz Enters., Inc. v. Port Everglades, 746 So.2d 498, 502 (Fla. 4th DCA 1999).
The aging condition of the banana in each case gave rise to a reasonable inference that the aging occurred on the floor. If the aging occurred on the floor, this would provide circumstantial evidence of constructive notice; that is, that it was on the floor a sufficient period of time so that the defendant knew or should have known of its existence. As the Third District recognized in Teate, the mere fact that there may be alternative explanations inconsistent with the deterioration occurring on the floor does not render the circumstantial evidence of constructive knowledge fatally deficient. 524 So.2d at 1061. Rather, the condition of the substance gives rise to an inference that the aging occurred on the floor and allows the jury to make the ultimate factual determination as to whether the dangerous condition resulted from the store's failure to properly maintain and inspect the floors. This analysis is consistent with our opinion in Montgomery. We find that the Second District's reliance in Bates upon Trusell to be misplaced. See Bates, 182 So.2d at 311. *330 Thus, we disapprove of the reasoning of Bates, which was followed in Owens and Soriano, and we approve Judge Sharp's dissent in Owens.
Although we determine that the granting of the directed verdict in these cases was erroneous, our review of the myriad number of cases dealing with transitory foreign substances demonstrates to us that instead of focusing on the duty of the premises owner to maintain the premises in a reasonably safe condition, courts have instead focused on the ability of the plaintiff to prove actual or constructive knowledge of an unsafe condition. The shortcomings of the traditional premises liability rule as it has been applied are apparent; particularly that the burden is placed on the plaintiff to prove that the owner had constructive knowledge of the specific transitory foreign substance. More specifically, all too often, the outcome of whether the case will be decided by the jury depends on the exact description of the transitory foreign substance. As both of the cases on review demonstrate, because a plaintiff is often unable to establish when the area was last maintained, the defendant benefits from its own lack of record-keeping. As the New Jersey Supreme Court noted in Wollerman, it is unfair to place the burden on a customer to establish actual or constructive notice on the part of the premises owner who is in control of its own premises and the evidence on which notice is based. See Wollerman, 221 A.2d at 514.
For example, Soriano presented evidence not only of the condition of the banana, but also that there was a total lack of record-keeping and that the store had no way of knowing when it last swept the area. Thus, the question raised is whether the store should benefit from its own lack of record-keeping and whether the lack of evidence as to reasonable precautions taken should raise an inference that the store did not exercise that degree of care commensurate with the foreseeable risk of injury. In addition, with regard to foreseeability, the former manager in Soriano testified that it was common for customers to eat food before they got to the cash registers; on occasion customers would eat the fruit that was for sale; and on occasion customers would drop the food they were eating.
"Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others." McCain v. Florida Power Corp., 593 So.2d 500, 503 (Fla.1992). It is undisputed that under Florida law, all premises owners owe a duty to their invitees to exercise reasonable care to maintain their premises in a safe condition. The existence of a transitory foreign substance on the floor is not a safe condition.
Having surveyed cases in this State as well as in other jurisdictions, we conclude that modern-day supermarkets, self-service marts, cafeterias, fast-food restaurants and other business premises should be aware of the potentially hazardous conditions that arise from the way in which they conduct their business. Indeed, the very operation of many of these types of establishments requires that the customers select merchandise directly from the store's displays, which are arranged to invite customers to focus on the displays and not on the floors. In addition, the premises owners are in a superior position to establish that they did or did not regularly maintain the premises in a safe condition and they are generally in a superior position to ascertain what occurred by making an immediate investigation, interviewing witnesses and taking photographs. In each of these cases, the nature of the defendant's business gives rise to a substantial *331 risk of injury to customers from slip-and-fall accidents and that the plaintiff's injury was caused by such an accident within the zone of risk.
All of these factors lead us to conclude that premises liability cases involving transitory foreign substances are appropriate cases for shifting the burden to the premises owner or operator to establish that it exercised reasonable care under the circumstances, eliminating the specific requirement that the customer establish that the store had constructive knowledge of its existence in order for the case to be presented to the jury. Presumptions, which are created either judicially or legislatively and arise from considerations of fairness, public policy, and probability, are used to allocate the burden of proof. See generally Charles W. Ehrhardt, Florida Evidence § 301.1 (2000 ed.)
Accordingly, we adopt the following holding to be applied to slip-and-fall cases in business premises involving transitory foreign substances. We hold that the existence of a foreign substance on the floor of a business premises that causes a customer to fall and be injured is not a safe condition and the existence of that unsafe condition creates a rebuttable presumption that the premises owner did not maintain the premises in a reasonably safe condition.
Thus, once the plaintiff establishes that he or she fell as a result of a transitory foreign substance, a rebuttable presumption of negligence arises. At that point, the burden shifts to the defendant to show by the greater weight of evidence that it exercised reasonable care in the maintenance of the premises under the circumstances.[10] The circumstances could include the nature of the specific hazard and the nature of the defendant's business.
This shift away from the artificial requirement that the injured person establish how long a transitory foreign substance was on the floor of the defendant's premises makes sense from a policy viewpoint because it will prevent premises owners or operators from benefitting from their absence of record-keeping and it will increase the incentive for them to take protective measures to prevent foreseeable risks. This opinion shall be applicable to all cases commenced after the decision becomes final and those cases already commenced, but in which trial has not yet begun.
We emphasize that this burden-shifting does not eliminate the plaintiff's burden of proving that the slip and fall accident was the cause of the plaintiff's injuries. We also emphasize that this holding does not render the premises owners or operators strictly liable for the injury. The ultimate question for the jury is whether the premises owner or operator exercised reasonable care in maintaining its premises in a safe condition.
*332 As to the theory of mode of operation rejected by the Fourth District and raised by the Sorianos as an issue on appeal in this Court, in accordance with our precedent, we recognize the continued viability of the mode of operation theory. If the evidence establishes a specific negligent mode of operation such that the premises owner could reasonably anticipate that dangerous conditions would arise as a result of its mode of operation, then whether the owner had actual or constructive knowledge of the specific transitory foreign substance is not an issue. The dispositive issue is whether the specific method of operation was negligent and whether the accident occurred as a result of that negligence. To the extent that Rowe, Schaap, and Sanchez reject or limit the application of the mode of operation theory, we disapprove those decisions.
Nonetheless, we conclude that in Soriano, although the plaintiff's alleged a negligent mode of operation, the evidence the plaintiff's produced to support such a theory was that B & B employees had failed to timely fill out inspection reports and sweep on a regular basis. This evidence amounts to no more than a general claim of negligence in the maintenance of the premises and does not support a more specific claim of negligent mode of operation in this case.
In conclusion, we hold that in this case, the directed verdicts were erroneously entered because the condition of the banana raised a basis for establishing the store's constructive knowledge. Whether the aging occurred before the banana fell or whether the aging occurred on the floor is an issue for the jury, as are the reasonable inferences from the failure to sweep the floors regularly.
Upon remand in each case, the burden shifts to the defendant to prove that it exercised reasonable care by properly maintaining and inspecting the premises. For the reasons we expressed above, we quash the decisions of the Fifth District in Owens and the Fourth District in Soriano, and we remand these cases for further proceedings consistent with this opinion.[11]
It is so ordered.
SHAW, ANSTEAD, and QUINCE, JJ., concur.
WELLS, C.J., concurs in result only with an opinion.
HARDING, J., concurs in result only with an opinion, in which LEWIS, J., concurs.
WELLS, C.J., concurring in result only.
I concur with the result reached by the majority and with the burden shifting discussion, which I conclude is the crux of the majority's opinion. I cannot join in the majority opinion. Specifically, I do not join in the majority's discussion of the viability of the mode of operation theory.
This case presents the Court with the opportunity to reexamine this Court's doctrine, which has consumed inordinate judicial labor in our trial courts during almost the entirety of the second half of the past century. Almost every Florida tort lawyer who has practiced tort law for any length of time since the 1950s has struggled with the application of the rules of this Court's decisions in Food Fair Stores, Inc. v. Trusell, 131 So.2d 730 (Fla.1961); Food Fair Stores of Florida, Inc. v. Patty, 109 So.2d 5 (Fla.1959); and Carls Markets, Inc. v. Meyer, 69 So.2d 789 (Fla.1953). In Patty, this Court stated the rule to be:
The established rule in this state is that if the dangerous condition of the floor is created by a servant or agent of the *333 owner, or even if created by an outsider, and the condition is one which has existed for sufficient length of time that the owner should have known of it, then under these circumstances the owner may be held liable for ensuing injuries.

Food Fair Stores of Florida, Inc. v. Patty, 109 So.2d at 6 (emphasis added).
In Trusell, this Court clarified that there would always be actual knowledge if the dangerous condition was created by the owner's employee or agent. However, the debate constantly repeats as to what evidence is sufficient to demonstrate sufficient constructive knowledge on the part of a store's owner to have the owner's liability decided by a jury.
I conclude that the rule of these cases needs to be reexamined and changed because: (1) the rule has proven to be too difficult to administer, resulting in differing results as to the same facts and has had to be the subject of such substantial and continuing appellate labor; (2) the rule fails to take into consideration that the Court has moved from contributory negligence as a defense, barring all recoveries, to comparative negligence, which is a doctrine of apportionment of fault; (3) the Legislature and this Court have adopted the doctrine of apportionment of fault by juries; and (4) the public, as consumers, have an expectancy that store owners will provide safe places to shop, bear the burden of protecting consumers against injuries while they shop, and price into their commodities the costs of that protection and paying for injuries that result to the customers from unsafe conditions on their premises.
The fundamental duty in these cases is a duty on the part of the store owner to maintain the premises in a reasonably safe condition. It is this duty which should be the central to the legal doctrine in theses casesnot the store owner's constructive knowledge of an unsafe condition. A foreign object on the floor in a store which causes a customer to fall and be injured is simply not a safe condition. Proof of an unsafe condition should be a sufficient prima facie showing of the store owner's breach of duty. Thus, it is logical that when such a condition is shown to have existed, resulting in a fall and injury, the burden of overcoming this prima facie case should be on the store owner. I agree that the store owner can reduce its percentage of liability or even in some instances overcome this prima facie case by evidence of the store owner's lack of knowledge of the condition, reasonable care in attempting to guard against the unsafe condition, and warning of such a condition. Issues of care in respect to whether the store owner or the plaintiff should have known about the condition are really issues subsumed within apportionment of fault rather than duty. This occurs through the store owner's liability being reduced by proving the customer's comparative negligence. But all of these issues are rightly for the jury to decide as a matter of fact, not for the judge to decide as a matter of law.
In sum, I believe this decision can and should be accomplished by a succinct, straight-forward receding from the constructive knowledge portion of the rule of the store owner's liability.
HARDING, J., concurring in result only.
Based on Teate v. Winn-Dixie Stores, 524 So.2d 1060 (Fla. 3d DCA 1988), I agree with the majority that evidence of the deteriorated condition of a banana provides a sufficient basis for the jury to make the ultimate factual determination as to whether the dangerous condition resulted from the store's failure to properly maintain or inspect the floors. Accordingly, I agree *334 that the granting of the directed verdicts in these cases was erroneous and, thus, agree with the majority's decision to quash the decisions below. However, I would go no further. The majority's discussion regarding "the shortcomings of traditional premises liability" is supervenient and not necessary to the resolution of these cases. By doing as such, the majority goes too far in deciding the cases at hand and essentially rewrites Florida's law regarding slip-and-fall cases.
LEWIS, J., concurs.
NOTES
[1] By "transitory foreign substance," we refer generally to any liquid or solid substance, item or object located where it does not belong. See Black's Law Dictionary 660 (7th ed. 1999) (A foreign substance is "[a] substance found ... where it is not supposed to be found").
[2] For purposes of oral argument, on our own motion, we consolidated these two cases. On our own motion, we now consolidate these cases for disposition in this opinion.
[3] In addition, Owens presented evidence that nine slip-and-fall accidents had occurred at that Publix within the last nine months, but none of these occurred on the aisle in which she fell and no other details were provided as to the nature of these accidents, including whether the individual fell on a transitory foreign substance.
[4] "[A]ctual or constructive knowledge is irrelevant in cases not involving transitory, foreign substances (i.e., the typical banana peel case), if ample evidence of negligent maintenance can be shown." Mabrey v. Carnival Cruise Lines, Inc., 438 So.2d 937, 938 (Fla. 3d DCA 1983).
[5] See, e.g., Safeway Stores, Inc. v. Smith, 658 P.2d 255 (Colo.1983); Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486, 488 (La.1976);
[6] See, e.g., Chiara v. Fry's Food Stores of Arizona, Inc., 152 Ariz. 398, 733 P.2d 283, 286 (1987).
[7] See, e.g., Gump v. Walmart Stores, Inc., 93 Hawai`i 428, 5 P.3d 418 (Ct.App.1999); affirmed in part, reversed in part, 93 Hawai'i 417, 5 P.3d 407 (2000); Pimentel v. Roundup Co., 100 Wash.2d 39, 666 P.2d 888, 891 (1983).
[8] See, e.g., Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 221 A.2d 513, 514-15 (1966).
[9] However, the Louisiana legislature subsequently overruled the court's decisions by codifying the requirement of actual or constructive knowledge into statute. See 1990 La. Acts 1025, La.Rev.Stat. Ann. § 9:2800.6 (West 1990).
[10] The presumption is one affecting the burden of proof pursuant to section 90.304, Florida Statutes (2000). As we explained in Beal Bank, SSB v. Almand & Associates, 780 So.2d 45, 59 n. 20 (Fla.2001):

Section 90.304 provides that "in civil actions, all rebuttable presumptions which are not defined in s. 90.303 are presumptions affecting the burden of proof." Pursuant to section 90.302(2), a presumption affecting the burden of proof "imposes upon the party against whom it operates the burden of proof concerning the nonexistence of the presumed fact." Thus, when evidence rebutting such a presumption is introduced, the presumption does not automatically disappear. It is not overcome until the trier of fact believes that the presumed fact has been overcome by whatever degree of persuasion is required by the substantive law of the case. See generally Charles W. Ehrhardt, Florida Evidence, §§ 302.1, 302.2, 303.1, 304.1 (2000 ed.).
[11] In light of our disposition in this case, the remaining issues are moot.