[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10993

Non-Argument Calendar

_____

JAMES DEAKINS,

Plaintiff-Appellant,

*versus*

WAL-MART STORES EAST, LP,
A Foreign Limited Partnership d.b.a. Walmart #2176,

Defendant-Appellee,

MARY WEBSTER,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cv-80935-DMM

_____

Before LAGOA, BRASHER, and ED CARNES, Circuit Judges.

PER CURIAM:

After slipping on water at the entrance of a Walmart store and sustaining injuries, James Deakins sued Walmart for negligence. He now appeals the district court's grant of summary judgment in favor of Walmart. We think the store's surveillance video creates a genuine question of fact about whether Walmart had constructive knowledge of the water on the floor, so we reverse the grant of summary judgment in favor of Walmart and remand.

## I.  Background

In March 2019, James Deakins went to a Walmart store in Jupiter, Florida. He made some purchases, left the store to put his purchased items in his car, and then reentered to use the restroom, using the same entrance each time he entered and exited the store. As he reentered the store, he slipped on water on the floor of the vestibule area. He regained his balance without falling but injured his back, knee, and hip.

Although it had rained on and off that day, it's undisputed that it was not raining when Deakins entered, exited, or reentered

the store.  Deakins testified that when he first left the store he did not notice any water on the floor.  He also did not notice any water on the floor when he reentered until after he slipped.  He recalled looking down to see what caused his slip and noticing a "sheen" of water about three feet in diameter.

Deakins' slip and the events leading up to it were captured on one of Walmart's security cameras.  The surveillance video shows Deakins first entering the store at 1:35 p.m.  As he enters, he walks past a large fan that is facing the vestibule area.

While Deakins is inside the store, no shoppers walking through the same doors use an umbrella, raincoat, or anything else to cover themselves from rain.  But during that time (and even before Deakins arrives at the store), wet spots are occasionally visible on the floor of the vestibule as shoppers enter the store.

Deakins first leaves the store at 1:53 p.m.  He reenters the store two minutes and 18 seconds later (walking directly over the same area he previously walked over when he exited) and slips. The specific wet spot Deakins faults for his slip is not visible on the surveillance video in the seconds before the slip, but two tracks of water are clearly visible after the slip.  It is not completely clear from the video whether Deakins himself tracked the water in from outside the store or whether it was already present there.

The vestibule Deakins walked through has two sets of sliding automatic doors.  The video shows that the time of Deakins' slip, one set of doors had a floor mat covering the entrance and the

other did not. Deakins entered, exited, and reentered through the set of doors that did not have a mat.

Walmart's wet weather policy instructs employees "to place carpeted mats at each entrance" "[w]hen wet weather is expected." Several Walmart employees confirmed that they are supposed to place floor mats at store entrances if it's raining or expected to rain.

Although not required by the wet weather policy, Walmart employees also put fans at entrances and exits when it rains to help dry wet floors. Sometimes employees remove the fans after the floor is dry, and other times they leave the fans in the vestibule areas in case it rains again.

After his slip Deakins sued Walmart, alleging that Walmart was negligent in inspecting and maintaining its premises. The district court granted summary judgment to Walmart, concluding that Deakins had not shown a genuine dispute of fact as to whether Walmart had actual or constructive knowledge of the dangerous condition. Deakins now appeals.

## II. Standard of Review

We review *de novo* the district court's grant of summary judgment, construing the facts and drawing all reasonable inferences in favor of the nonmoving party. *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009). Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III.  Discussion

To prove negligence under Florida law, a plaintiff must show that: (1) the defendant owed him a duty, (2) the defendant breached that duty, (3) the defendant's breach caused the plaintiff's injury, and (4) the plaintiff suffered some actual harm.[1] *Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007).

Businesses generally "owe a duty to their invitees to exercise reasonable care to maintain their premises in a safe condition." *Friedrich v. Fetterman & Assocs., P.A.*, 137 So. 3d 362, 365 (Fla. 2013) (quotation marks omitted).  But Fla. Stat. § 768.0755 limits a business's liability to an invitee who is injured by a "transitory foreign substance."[2]  *See Lago v. Costco Wholesale Corp.*, 233 So. 3d 1248, 1250 (Fla. 3d DCA 2017); *see also Lauderdale Supermarket, Inc. v. Puentes*, 332 So. 3d 526, 530 (Fla. 4th DCA 2021) (explaining that Fla. Stat. § 768.0755 does not allow for liability based solely on the business's "general failure to maintain the premises").  Section 768.0755 provides that "[i]f a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or

---

[1] Because Deakins' negligence claims arise under Florida law and we are exercising diversity jurisdiction, we apply Florida's substantive law.  *See Pendergast v. Spring Nextel Corp.*, 592 F.3d 1119, 1132–33 (11th Cir. 2010).

[2] The Florida Supreme Court has defined a "transitory foreign substance" as "any liquid or solid substance, item or object located where it does not belong."  *Owens v. Publix Supermarkets, Inc.*, 802 So. 2d 315, 317 n.1 (Fla. 2001).

6                    Opinion of the Court                    22-10993

constructive knowledge of the dangerous condition and should have taken action to remedy it." Fla. Stat. § 768.0755(1).

Actual knowledge of a dangerous condition exists when a business's employee or agent "knows of or creates" the dangerous condition. *Barbour v. Brinker Fla., Inc.*, 801 So. 2d 953, 957 (Fla. 5th DCA 2001); *see Food Fair Stores, Inc. v. Trusell*, 131 So. 2d 730, 732 (Fla. 1961). A plaintiff can establish constructive knowledge with circumstantial evidence showing that either: (1) "[t]he dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition;" or (2) "[t]he condition occurred with regularity and was therefore foreseeable." Fla. Stat. § 768.0755(1).

Deakins contends that the evidence shows that Walmart had both actual and constructive knowledge that the floor of the vestibule was wet. We conclude that the record contains sufficient evidence to create a genuine issue of fact about Walmart's constructive knowledge.[3]

"[T]he mere presence of water on the floor is not enough to establish constructive notice." *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1090 (Fla. 3d DCA 2011). "[T]he record must contain additional facts in support of liability, to create a permissible inference" upon which Deakins can rely in defense against summary

---

[3] Because we hold that there is a genuine dispute as to Walmart's constructive knowledge, we need not address Deakins' contentions regarding actual knowledge. *See* Fla. Stat. § 768.0755(1) (requiring either actual *or* constructive knowledge for liability).

judgment. *Id.* Therefore, the evidence viewed in the light most favorable to Deakins must support a reasonable inference that Walmart should have known about the water, either because of the amount of time the floor was wet or because wet floors were a regular occurrence. *See* Fla. Stat. § 768.0755(1).

"In trying to assess *how long* a substance has been sitting on a floor, courts look to several factors, including evidence of footprints, prior track marks, changes in consistency, [or] drying of the liquid." *Welch v. CHLN, Inc.*, 357 So. 3d 1277, 1278–79 (Fla 5th DCA 2023) (alteration in original) (quotation marks omitted); *accord Norman v. DCI Biologics Dunedin, LLC*, 301 So. 3d 425, 430 (Fla. 2d DCA 2020) (finding evidence such as "footprints, prior track marks, changes in consistency, [or] drying of the liquid" tended to show liquid "was on the floor for an amount of time sufficient to impute constructive notice") (alteration in original) (quotation marks omitted). But when there is "nothing about the description of the substance that would indicate the length of time it was on the floor, courts have precluded the jury from deciding the issue of negligence." *Owens v. Publix Supermarkets, Inc.*, 802 So. 2d 315, 321–22 (Fla. 2001).

In rejecting Deakins' constructive knowledge arguments, the district court found that he had not offered any evidence of how long the water was on the floor. After carefully reviewing the video footage, we disagree. Viewing the video in the light most favorable to Deakins, it creates a genuine dispute as to whether

water had been on the floor of the vestibule entrance for long enough that Walmart should have known about it.

The surveillance video shows that a fan was placed in the vestibule at least an hour before the incident. As Walmart admits, that indicates that the floor had been wet more than an hour earlier. True, the fan was supposed to dry the floor. But the video also shows that for almost 30 minutes leading up to Deakins' slip, wet spots regularly appear on the floor as shoppers enter the vestibule. Some Florida courts have found, based on the specific facts and evidence of the case, that evidence of a condition being present for at least fifteen to twenty minutes may "be sufficient for defendants to be charged with knowledge of the condition and a reasonable time in which to correct it." *See Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1169 (11th Cir. 2023) (first quoting *Winn Dixie Stores, Inc. v. Williams*, 264 So. 2d 862, 864 (Fla. 3d DCA 1972); then citing *Lynch v. Target Stores, Div. of Dayton Hudson Corp.*, 790 So. 2d 1193, 1194 (Fla. 4th DCA 2001)). Viewing the evidence in the light most favorable to Deakins, a reasonable jury could conclude that, under the circumstances of this case, close to 30 minutes of the presence of liquid in the vestibule area was enough time for Walmart to have been on notice of the wet floor. *See, e.g.*, *Lynch*, 790 So. 2d at 1194 ("The facts, viewed most favorably to the plaintiff, support a reasonable inference that the foreign substance had been on the floor for a minimum of fifteen minutes. Whether that is sufficient time in which appellee should have become aware of this condition is for the trier of fact."); *Little v. Publix Supermarkets, Inc.*, 234 So. 2d 132, 134 (Fla. 4th DCA 1970).

Walmart acknowledges that the video shows customers tracking in water but claims that those water marks "disappear." Admittedly, the video is not entirely clear.  The wet spots are most visible when the automatic doors or shoppers cast shadows onto the vestibule floor, and there are times when the spots aren't visible at all.  A jury viewing the video footage could reasonably conclude that the spots disappear as the fan dries them.  But the video allows for the competing inference that some marks "disappear" from sight because of shifting shadows and glare, not because the water dries completely.  Given these competing inferences, we take Deakins' version of what happened in the video at the summary judgment stage.  *See Shaw v. City of Selma*, 884 F.3d 1093, 1097 n.1 (11th Cir. 2018) (explaining that "where a [video] recording does not clearly depict an event or action, and there is evidence going both ways on it, we take the [nonmovant's] version").

Walmart also argues that the exact water mark where Deakins slipped is not visible on the video in the seconds before the incident.  It points to Deakins' own admission that he could have tracked in the water on which he slipped.  Indeed, reviewing the video, one reasonable inference is that Deakins tracked in the liquid that he slipped on, given that liquid tracks visibly appear right after Deakins' several steps in the area.  But the video also shows that water is visible in that vestibule area 20 minutes before Deakins slips — and, arguably, at other instances after that point, depending on how one views the glare and shadows, leading to a reasonable inference that the floor was still wet at the time Deakins slipped. And just a few seconds before the slip, another shopper leaving the

store appears to look down at the same area of the floor, although it is not entirely clear whether she is looking at the floor itself or at one of her grocery bags.  In any event, Walmart's focus on the particular offending puddle overlooks the undisputed video evidence that shoppers tracked water across the vestibule floor for nearly 30 minutes leading up to the incident.  While a jury could reasonably conclude that the cause of Deakins' fall was from liquid he tracked in from outside of the store and that the previous water on the floor had fully dried, a jury could also reasonably conclude from the video footage that water on the area of the floor where Deakins slipped was the cause of the fall and there long enough before the slip for Walmart to have had constructive knowledge of it and correct it.

We reverse the district court's grant of summary judgment in favor of Walmart and remand for proceedings consistent with this opinion.

**REVERSED and REMANDED.**