CIKLIN, J.
Pembroke Lakes Mall Ltd. (“Pembroke Lakes”), and Millard Mall Services, LLC (“Millard”), appeal the final judgment awarding June McGruder $269,049.50 following a slip and fall accident. Pembroke Lakes and Millard raise four issues: (1) the trial court erred by denying a motion for directed verdict, (2) the trial court erred by determining section 768.0755, Florida Statutes (2010) did not apply retroactively, (3) the trial court abused its discretion by denying a motion for mistrial, and (4) the trial court abused its discretion by denying a post-verdict motion to conduct juror interviews. McGruder cross-appeals, arguing the trial court erred by refusing to hold Pembroke Lakes jointly and severally liable for the negligence the jury attributed to Millard. We conclude the trial court properly denied the Mall’s motion for directed verdict and the court did not abuse its discretion by denying the motion for mistrial following McGruder’s improper arguments. We also affirm the trial court’s decision to not apply section 768.0755 retroactively, and we certify conflict with the Third District on that issue. We reverse on the issues of the juror interviews and the cross-appeal, and remand for the court to allow Pembroke Lakes and Millard to conduct interviews of the jurors.
Facts
In 2008, June McGruder went to a shopping mall to purchase clothing. The mall was owned by Pembroke Lakes, which contracted with Millard to clean and maintain the premises. As McGruder walked through the mall, she slipped and fell on a clear, slippery substance on the floor. McGruder sustained injuries resulting *422 from the fall and received medical treatment for the injuries.
In 2010, McGruder sued Pembroke Lakes and Millard for negligence in failing to warn McGruder of the spill, allowing the spill to remain on the floor, and failing to have a proper maintenance and clean-up plan in place to prevent spills from remaining on the floor. Before trial, Pembroke Lakes and Millard moved for a determination that section 768.0755, Florida Statutes (2010), applied retroactively and would be the operative statute for the trial. The court denied the motion, and determined that the statute in effect at the time of the accident, section 768.0710, Florida Statutes (2008), would apply in the trial.[1]
The case proceeded to trial in 2011. During voir dire, the trial court asked each prospective juror: “Have you or any member of your family ever participated in a lawsuit as a party or a witness or in some other capacity?” The court clarified that the potential jurors did not need to disclose divorces. Four prospective jurors who eventually served on the jury, Angel, Rhonda, Jorge, and Audrey,[2] answered they had not participated in a lawsuit.
At the conclusion of trial, the jury returned a verdict finding Pembroke Lakes and Millard negligent for the accident, and finding that McGruder was not comparatively negligent. The jury awarded McGruder $269,049.50 for past medical expenses, future medical expenses, and pain and suffering. The jury then assigned fifty percent liability each to Pembroke Lakes and Millard.
Pembroke Lakes and Millard filed a post-verdict motion seeking to avoid a judgment in favor of McGruder on several grounds. Pembroke Lakes and Millard argued their motion for directed verdict should have been granted because McGru-der failed to show that Pembroke Lakes and Millard had actual or constructive knowledge of the spill or that Pembroke Lakes and Millard breached their duties of care under either sections 768.0710 or 768.0755. Pembroke Lakes and Millard also argued their motion to have section 768.0755 apply retroactively and their motion for mistrial should have been granted. Pembroke Lakes and Millard also moved to conduct juror interviews on the grounds that certain jurors had failed to disclose their involvement in previous litigation. Pembroke Lakes and Millard provided Broward County Clerk of Court records which indicated juror Angel failed to disclose four eviction and small claims cases during the ten years before the McGruder trial, Rhonda failed to disclose she was the defendant in a civil case in 1991, Jorge failed to disclose two personal injury protection matters, a mortgage foreclosure case, and a domestic violence case during the ten years before trial, and Audrey failed to disclose that she was the defendant in a civil case in 2008 and a small claims case in 1998.
The trial court denied Pembroke Lakes and Millard’s post-verdict motion without a hearing.
McGruder moved to have Pembroke Lakes be held jointly and severally liable *423 for the negligence attributed to Millard. McGruder argued Pembroke Lakes owed a non-delegable duty of care to McGruder, and that Pembroke Lakes could not reduce its liability by contracting with Millard to perform mall maintenance. The court denied the motion and split the verdict evenly in the judgment, obligating Pembroke Lakes and Millard to pay McGruder $134,524.75 each.
Pembroke Lakes appeals the denial of its post-verdict motion. We affirm the trial court’s decisions regarding the directed verdict and the mistrial without discussion.
Retroactive Application of Section 768.0755
We first address the issue of whether section 768.0755, Florida Statutes (2010), applies retroactively. Whether a new statute applies retroactively is a pure question of law, subject to de novo review. Smiley v. State, 966 So.2d 330, 333 (Fla.2007).
We begin with an overview of slip and fall cases in Florida. “All premises owners owe a duty to their invitees to exercise reasonable care to maintain their premises in a safe condition.” Owens v. Publix Supermarkets, Inc., 802 So.2d 315, 320 (Fla.2001) (citation omitted). Before 2001, Florida law required a person who slipped and fell on a transitory foreign substance to prove that the premises owner had actual or constructive knowledge of the dangerous condition to successfully assert a cause of action against the owner. Id. (citation omitted). In 2001, after a thorough discussion of the problems associated with requiring a plaintiff to prove the owner’s knowledge and the approaches taken by foreign jurisdictions, the Florida Supreme Court held:
[T]he existence of a foreign substance on the floor of a business premises that causes a customer to fall and be injured is not a safe condition and the existence of that unsafe condition creates a rebut-table presumption that the premises owner did not maintain the premises in a reasonably safe condition.
Thus, once the plaintiff establishes that he or she fell as a result of a transitory foreign substance, a rebuttable presumption of negligence arises. At that point, the burden shifts to the defendant to show by the greater weight of evidence that it exercised reasonable care in the maintenance of the premises under the circumstances.
Owens, 802 So.2d at 331.
In 2002, apparently in response to Owens, the Florida Legislature enacted section 768.0710, Florida Statutes (2002), establishing the “Burden of proof in claims of negligence involving transitory foreign objects or substances against persons or entities in possession or control of business premises.” The statute in effect at the time McGruder slipped and fell provided:
(1) The person or entity in possession or control of business premises owes a duty of reasonable care to maintain the premises in a reasonably safe condition for the safety of business invitees on the premises, which includes reasonable efforts to keep the premises free from transitory foreign objects or substances that might foreseeably give rise to loss, injury, or damage.
(2) In any civil action for negligence involving loss, injury, or damage to a business invitee as a result of a transitory foreign object or substance on business premises, the claimant shall have the burden of proving that:
(a) The person or entity in possession or control of the business premises owed a duty to the claimant;
(b) The person or entity in possession or control of the business premises acted *424 negligently by failing to exercise reasonable care in the maintenance, inspection, repair, warning, or mode of operation of the business premises. Actual or constructive notice of the transitory foreign object or substance is not a required element of proof to this claim. However, evidence of notice or lack of notice offered by any party may be considered together with all of the evidence; and (c) The failure to exercise reasonable care was a legal cause of the loss, injury, or damage.
§ 768.0710, Fla. Stat. (2008).
Thus, the legislature removed the burden-shifting aspects of the Owens decision, and returned the pre-Owens rule providing that the plaintiff had the burden of proving the premises owner was negligent. Nonetheless, the legislature maintained the Florida Supreme Court’s decision to remove the owner’s actual or constructive knowledge as “a required element of proof to this claim.” See § 768.0710(2)(b), Fla. Stat. (2008).
Another and substantial revision was enacted in 2010. The legislature repealed section 768.0710 and replaced it with section 768.0755, Florida Statutes (2010) and therein provided an effective date of July 1, 2010. In revising the law and repealing section 768.0710, the legislature did not state the new statute should apply retroactively. Section 768.0755 is entitled “Premises liability for transitory foreign substances in a business establishment” and provides:
(1)If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
(a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
(b) The condition occurred with regularity and was therefore foreseeable.
(2) This section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises.
§ 768.0755, Fla. Stat. (2010).
The most significant change between sections 768.0710 and 768.0755 concerned prior notice of a dangerous condition. The older 2002 statute expressly stated actual or constructive notice was not “a required element of proof to this claim,” but the new 2010 statute expressly stated the plaintiff “must prove that the business establishment had actual or constructive knowledge of the dangerous condition.” Additionally, the new statute does not contain any language regarding the owner’s negligent maintenance, inspection, repair, warning, or mode of operation.
With that overview, we turn now to whether section 768.0755 applies retroactively. In Kenz v. Miami-Dade County, 116 So.3d 461 (Fla. 3d DCA 2013), the Third District recently analyzed this issue and determined that the section applies retroactively. While we agree with the way the Kenz court framed the issue, we disagree with the court’s conclusion.
The Florida Supreme Court has set a two-prong test for determining whether a statute applies retroactively: “ ‘First, the Court must ascertain whether the Legislature intended for the statute to apply retroactively. Second, if such an intent is clearly expressed, the Court must determine whether retroactive application would violate any constitutional principles.’ ” Fla. Ins. Guar. Ass’n v. Devon Neighbor *425 hood Ass’n, 67 So.3d 187, 195 (Fla.2011) (quoting Menendez v. Progressive Express Ins. Co., 35 So.3d 873, 877 (Fla.2010)). As to the first prong, legislative intent, the legislature gave no indication in section 768.0755 that the statute was to be applied retroactively.
Even in the absence of legislative indication that a statute should apply retroactively, procedural and remedial[3] statutes “should be applied to pending cases in order to fully effectuate the legislation’s intended purpose.” Arrow Air, Inc. v. Walsh, 645 So.2d 422, 424 (Fla.1994) (citation omitted). The general rule against retroactive application of statutes does not apply to procedural or remedial changes. See Smiley, 966 So.2d at 334 (citing City of Lakeland v. Catinella, 129 So.2d 133, 136 (Fla.1961)); State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 61 (Fla.1995) (“The general rule is that a substantive statute will not operate retrospectively absent clear legislative intent to the contrary, but that a procedural or remedial statute is to operate retrospectively.” (citations omitted)).
Thus, the issue is whether section 768.0755 is procedural or substantive. “[Substantive law prescribes duties and rights and procedural law concerns the means and methods to apply and enforce those duties and rights.” Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352,1358 (Fla.1994) (citation omitted).
The retroactive application of statutes also implicates constitutional concerns. See Laforet, 658 So.2d at 61 (“[T]his Court has refused to apply a statute retroactively if the statute impairs vested rights, creates new obligations, or imposes new penalties.” (citations omitted)). An accrued cause of action constitutes a vested property right, and a statute cannot be applied retroactively in a way that eliminates a party’s vested property right. See Am. Optical Corp. v. Spiewak, 73 So.3d 120,125-26 (Fla.2011).
In American Optical, the Florida Supreme Court assessed the constitutionality of retroactive application of a law that required plaintiffs to show particular manifestations of harm caused by asbestos exposure in order to successfully assert an asbestos-related cause of action. Id. at 130. The Court found that the requirement of certain physical impairments was a change from the common law, which only required “changes in the lung evidencing asbestos-related disease.” Id. at 127.
The American Optical Court concluded the asbestos statute could not be applied retroactively because there were plaintiffs who had accrued causes of action that would be “completely abolish[ed]” if the statute were applied retroactively. Id. at 133. The Court noted that “statutes that operate to abolish or abrogate a preexisting right, defense, or cause of action cannot be applied retroactively.” Id. (citing Wiley v. Roof, 641 So.2d 66, 68-69 (Fla.1994)). The Court decided that application of the asbestos law to plaintiffs who had an already accrued cause of action was “impermissible because it violates the due process clause of the Florida Constitution.” Id.
In Kenz, the Third District thoroughly analyzed these principles and concluded:
[S]ection 768.0755 [the new 2010 statute] does not operate to alter a prima facie case for a negligence claim. Here, a plaintiff who has an accrued cause of action under section 768.0710 [the older *426 2002 statute] because of an injury due to a transitory foreign substance or object in a business establishment, continues to have the same cause of action under 768.0755 — unlike the claims discussed in American Optical, the cause of action continues to exist. Actual or constructive knowledge is not a “new” required element of a prima facie case under section 768.0755; rather, it concerns evidence, the burden of producing which is upon the plaintiff, that the jury must consider in determining whether there has been a breach of duty.
Kenz, 116 So.3d at 466.
Respectfully, we disagree with the Kenz court’s conclusion because the 2010 statute, section 768.0755, reinserts the pre-Owens knowledge element into slip and fall claims. See Kelso v. Big Lots Stores, Inc., No. 8:09-cv-01286-T-EAK-TGW, 2010 WL 2889882, at *2 (M.D.Fla. July 21, 2010) (“[Section 768.0755] adds a new element to the claim, creating a new legal obligation and attaching new legal consequences to events that took place before the statute’s enactment; therefore, the plaintiffs substantive rights are affected.”). A comparison of the language used in revising the statutes compels this result. Section 768.0710(2)(b), the 2002 statute, states “[a]ctual or constructive notice of the transitory foreign object or substance is not a required element of proof to this claim,” while section 768.0755(1), the newer statute, states “the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition.”
The shift from 768.0710 to 768.0755 was far more than a simple procedural change to the burden of proof. See Castellanos v. Target Corp., No. 10-62456-CIV, 2011 WL 5178334, at *3 (S.D.Fla. Oct. 14, 2011). Under the 2002 statute, a plaintiff could succeed in a slip and fall case by showing “the business premises acted negligently by failing to exercise reasonable care in the maintenance, inspection, repair, warning, or mode of operation of the business premises,” without showing the business had actual or constructive knowledge of the transitory foreign substance. Under the 2010 statute, however, the same plaintiff would be unable to successfully assert such a cause of action, no matter how persuasive or compelling the evidence the plaintiff had in support of the claim.
We also respectfully disagree with the Kenz court’s conclusion that applying section 768.0755 retroactively would not abolish a plaintiffs cause of action. Slip and fall plaintiffs who could successfully assert a cause of action under the 2002 statute even without the owner having knowledge of the spill would be completely unable to pursue their causes of action if the 2010 statute was applied retroactively. If these plaintiffs were injured before the effective date of the statute, the imposition of section 768.0755 would result in a wholesale abolition of their accrued causes of action. That type of impediment to a preexisting cause of action is constitutionally impermissible. See Am. Optical, 73 So.3d at 133.
For these reasons, we affirm the trial court’s decision to apply the 2002 statute (section 768.0710) rather than the 2010 law (section 768.0755), and certify conflict with the Third District’s Kenz decision.
Motion to Conduct Juror Interviews
We next address the trial court’s denial of the motion to conduct post-verdict juror interviews. “The standard of review for an order on a motion for juror interviews is abuse of discretion.” Sterling v. Feldbaum, 980 So.2d 596, 598 (Fla. 4th DCA 2008) (citation omitted).
*427 This Court has recently addressed the requirements for a post-verdict jury interview:
Post-trial juror interviews should be rarely granted and the sanctity of the jury process as well as the privacy rights of the jurors themselves should be closely guarded and protected. However, where there are reasonable grounds to believe concealment of a material fact has taken place, a party is entitled to conduct a jury interview. Allegations in the motion for interview cannot be bottomed on mere conclusory statements based on speculation and surmise that, if interrogated, the jurors might have something to say that would be material to whether or not the court should award a new trial.
Rodgers v. After Seh. Programs, Inc., 78 So.3d 42, 45 (Fla. 4th DCA 2012) (citations, alterations, and quotation marks omitted).
Where, as here, the basis of a request for post-trial interviews is the jurors’ alleged nondisclosure of information during voir dire, “the motion should demonstrate entitlement to a new trial under the three-part test” of De La Rosa v. Zequeira, 659 So.2d 239, 241 (Fla.1995). Id. The De La Rosa test requires the moving party to show:
(1) The concealed information was relevant and material to jury service in the case;
(2) The juror concealed the information during questioning; and
(3) The failure to disclose the information was not attributable to the complaining party’s lack of diligence.
Id. (citation omitted).
Pembroke Lakes and Millard primarily rely on this court’s decision in Sterling. In that case, the trial court provided the prospective jurors with a questionnaire that asked, among other things, whether the jurors or their immediate family members had any currently pending litigation or any litigation matters in the past. Sterling, 980 So.2d at 598. Two of the subsequently challenged jurors answered “no,” and the other challenged juror disclosed only that he had been involved in a suit that settled and that his brother had been involved in a criminal case. Id. After the jury rendered a verdict in favor of the defendant, the plaintiff moved to conduct post-verdict juror interviews based on the three jurors’ alleged nondisclosure of prior litigation. Id. The first juror was involved in three or four civil actions, the second juror had a federal tax lien filed against her, and the third juror had a civil collection judgment. Id. The plaintiffs motion was supported by “Westlaw printouts and information from the Broward County Court Clerk’s website about the three jurors.” Id. The trial court denied the motion to interview jurors on two grounds: (1) the Westlaw and clerk’s website information did not sufficiently indicate the jurors were the same people listed in the records, and (2) the prior lawsuits were too remote in time and substance to be material. Id.
On appeal, we reversed the denial of the motion for juror interviews. Id. at 599. We wrote “Westlaw and Broward docket search results may provide reasonable grounds to believe that juror misconduct has occurred.” Id. (citing Roberts v. Teja-da, 814 So.2d 334, 336-37 (Fla.2002) (noting that Miami-Dade official public records index, jury pool information, and “Autotrak” computerized background check supported motion for juror interviews)).
In a later case, we clarified that the trial court could properly deny a motion to interview jurors and motion for new trial if, taking the moving party’s allegations as true, the alleged nondisclosure would not *428 satisfy the De La Rosa test. Rodgers, 78 So.3d at 45. In Rodgers, we concluded the juror’s failure to disclose the information was due to the moving party’s own failures to properly craft its questions during voir dire; thus, the moving party failed the third prong of the De La Rosa test and juror interviews were unnecessary. Id.
Applying these principles to the instant case, we must conclude that the trial court abused its discretion by denying the motion to interview the jurors. “Although generally post-verdict juror interviews are disfavored, where there is adequate proof that a juror may have failed to disclose material information on voir dire, a party is entitled to conduct an interview of the juror.” Hillsboro Mgmt., LLC v. Pagono, 112 So.3d 620, 624 (Fla. 4th DCA 2013).
McGruder argues the court was not required to grant the motion for interviews because, even taking Pembroke Lakes’ and Mallard’s allegations as true, the allegations did not “demonstrate entitlement to a new trial under the three-part test of De La Rosa v. Zequeira.” See Rodgers, 78 So.3d at 45. As previously set forth, the first prong of the De La Rosa test is whether the nondisclosure is relevant and material to the instant case.
A juror’s nondisclosure of pri- or litigation is relevant, but it is not necessarily material. See Roberts, 814 So.2d at 341 (citation omitted); Parra v. Cruz, 59 So.3d 211, 213 (Fla. 3d DCA 2011) (“The respondents rely on the misplaced notion that any prior litigation history coming to light after trial is grounds for a new trial.”). Courts evaluate materiality based on the “circumstances of each case” using the following test: “Nondisclosure is considered material if it is substantial and important so that if the facts were known, the [moving party] may have been influenced to peremptorily challenge the juror from the jury.” Roberts, 814 So.2d at 341 (citations omitted). In applying this test, courts consider several factors: Remoteness in time from the undisclosed litigation, the character and extensiveness of the prior litigation (and similarity to the instant case litigation), and the juror’s posture in the litigation. Id. at 342-43 (citations omitted); see also Duong v. Ziadie, 125 So.3d 225, 228 (Fla. 4th DCA 2013).
Here, the prior litigation was potentially material to this slip and fall litigation. At least one of the jurors, Jorge, was involved in a personal injury protection lawsuit and may have participated in other litigation that was relevant and material to the instant case. Finally, with the exception of Rhonda,[4] the jurors’ undisclosed litigation occurred within four years of the trial.
While McGruder is correct in asserting that the record is unclear regarding the level of the jurors’ involvement in their respective cases and whether these jurors were the same people listed in the records, this court has specifically found that county clerk records are an acceptable basis to support a motion to interview jurors. See Sterling, 980 So.2d at 599. Further, in situations such as this, juror interviews provide an important purpose which upholds and protects the sanctity of voir dire:
[T]he court’s analysis of the De La Rosa factors ... requires the court to weigh all the facts in the case. The court cannot properly assess the requirements when the parties dispute the juror’s in *429 volvement in the litigation uncovered in the records search. We thus reverse the denial of new trial and remand for a juror interview and for the court to conduct a hearing on the motion for new trial in compliance with the principles announced in Roberts.
Hillsboro Mgmt., 112 So.3d at 624-25 (emphasis added); but see Rodgers, 78 So.3d at 46 (“As to the juror with a common name, there was insufficient proof that she was the same person who was involved in all of the prior civil cases.” (citation omitted)).
The second prong of the De La Rosa test concerns juror concealment of the information sought during jury selection. The concealment prong is met when the juror is “squarely asked for” the information and the juror fails to speak the truth.[5] Wiggins v. Sadow, 925 So.2d 1152, 1155 (Fla. 4th DCA 2006). The concealment prong may be met if the juror fails to respond to questions from either the court or the parties. See Taylor v. Magana, 911 So.2d 1263, 1270 (Fla. 4th DCA 2005). The nondisclosure need not be intentional to constitute concealment. Id. at 1268-69 (citation omitted).
Here, the concealment prong was met because the court unambiguously asked the challenged jurors whether they or their families were involved in or had been involved in any litigation apart from divorces, and all four categorically answered that they had not.
Finally, the third prong addresses whether the cause of the failure to elicit the information was due to the fault of the complaining party. If a juror mentions involvement in litigation and the complaining party does not ask follow-up questions, the party cannot then obtain a new trial because of undisclosed information relating to the litigation. See Rodgers, 78 So.3d at 45; Taylor, 911 So.2d at 1268. However, if the juror unambiguously denies involvement in prior litigation, counsel need not ask follow-up questions. See Taylor, 911 So.2d at 1270. Significantly, the due diligence prong does not require the complaining party to perform its records check before the verdict is returned.[6] See Roberts, 814 So.2d at 344.
Here, the jurors categorically answered that they had not been involved in prior litigation, in response to a clear question posed by the court. The parties were entitled to rely on the sacrosanct underpinnings of voir dire. The jurors’ answers and nondisclosures were not due to the fault of Pembroke Lakes or Millard.
We must also note the trial court’s denial of the motion to conduct juror interviews without holding a hearing on the issue. The rule governing juror interviews provides: “After notice and hearing, the trial judge shall enter an order denying the motion or permitting the interview.” Fla. R. Civ. P. 1.431(h). Florida courts have interpreted this rule to require the court to hold a hearing before denying the motion to interview jurors, at least if the motion is facially valid. See State Farm Mut. Auto. Ins. Co. v. Lawrence, 65 So.3d 52, 55 n. 1 (Fla. 2d DCA 2011) (“Florida Rule of Civil Procedure 1.431(h) requires that the trial court hold a hearing before *430 granting or denying a motion for juror interviews.”).
Accordingly, we reverse the trial court’s decision to deny the motion to interview the challenged jurors, with the exception of juror Rhonda. After the interviews are conducted, the trial court can properly apply the De La Rosa test to determine whether a new trial is required due to the undisclosed litigation history. See Sterling, 980 So.2d at 599.
Cross-Appeal
Finally, we address McGruder’s claim that the trial court erred by refusing to hold Pembroke Lakes liable for the negligence attributed to Millard.
Section 768.0710 imposes a non-delegable duty of care on business owners to maintain their premises in a reasonably safe condition for invitees. Armiger v. Associated Outdoor Clubs, Inc., 48 So.3d 864, 876 (Fla. 2d DCA 2010) (citation omitted). The premises owner cannot “avoid liability for the breach of its statutory duty by contracting the maintenance and cleaning function at the [premises] to others.” Id.
When an owner owes a non-dele-gable duty of care to a plaintiff who obtains a verdict assigning negligence to the owner and a party contracted by the owner, the owner is jointly and severally liable for the negligence attributed to the contracted party. See U.S. Sec. Servs. Corp. v. Ramada Inn, Inc., 665 So.2d 268, 269-71 (Fla. 3d DCA 1995) (holding hotel owner jointly and severally liable for portion of negligence attributed to company contracted by hotel to provide security); see also Armiger, 48 So.3d at 875 (“[W]hen a business owner is subject to a nondelegable duty, the potential responsibility of an independent contractor is not relevant to the analysis of the business owner’s liability ... [T]he party subject to the nondelega-ble duty is directly liable for the breach of that duty, and the assignment of liability based on the tortious acts of another is not a consideration.”).
Pembroke Lakes raises numerous arguments in opposition to imposing liability against it for the negligence attributed to Millard. We reject each argument and discuss the following three: (1) McGruder failed to plead a breach of non-delegable duty, (2) the jury made no findings regarding agency, and (3) the jury instructions and verdict form directed the jury to apportion liability between Pembroke Lakes and Millard.
McGruder’s amended complaint sufficiently pleaded a claim for breach of non-delegable duty against Pembroke Lakes. See Armiger, 48 So.3d at 876. In Armiger, the plaintiff slipped and fell in a puddle on the defendant’s business premises. Id. at 867. The plaintiff sued the defendant, alleging the owner was negligent and breached its duty to maintain the premises in a reasonably safe condition, the puddle existed for sufficient time that the owner should have known of it, the owner failed to ensure the area where the plaintiff slipped was free of standing water, the owner permitted a slippery substance to remain in the area where the plaintiff slipped, and the owner failed to timely inspect and clean the grandstand area. Id. In an amended complaint, the plaintiff added claims against an independent contractor hired by the owner to clean and maintain the business premises, and the amended complaint’s claims against the owner “remained essentially the same.” Id.
The Second District concluded that “[i]n light of the nondelegable duty of care imposed ... by section 768.0710(1),” the plaintiffs amended complaint “alleged all of the elements necessary to plead a cause *431 of action for breach of [the owner’s] non-delegable duty of care, and further amendment to the complaint may have been helpful but was not necessary” to plead a breach of non-delegable duty. Id. at 876. Similar to Armiger, McGruder’s amended complaint alleged all of the elements necessary to plead a cause of action for breach of Pembroke Lakes’ non-delegable duty of care.
Pembroke Lakes’ argument that a finding of agency is required to impose liability against a premises owner for a breach of a non-delegable duty is incorrect. Pembroke Lakes, like many parties and some courts, erroneously conflates the concepts of non-delegable duty and vicarious liability. See id. at 874. Vicarious liability is a form of indirect liability in which a party, who may have not been negligent, can be held hable for the acts of another party. Id. In contrast, a breach of a non-delegable duty is a form of direct liability, in which a business owner may be liable to the plaintiff for negligently failing to take reasonable efforts to maintain the premises in a safe condition. See id. at 874-75. To establish a breach of a non-delegable duty, the plaintiff need not prove an agency relationship because such a relationship is not relevant to the question of whether the owner is directly liable to the plaintiff. Regardless of whether the owner contracts with a party to clean and maintain the business premises, the owner is still directly hable to an injured invitee if reasonable efforts are not made to maintain the premises in a safe condition.
Finally, we address Pembroke Lakes’ argument that imposing liability against it for the negligence attributed to Millard would be improper because the jury instructions and verdict form directed the jury to apportion the negligence between Pembroke Lakes and Millard. This argument fails because although Pembroke Lakes is directly hable to McGruder for the negligence attributed to Millard, Millard is not necessarily liable to McGruder for the negligence attributed to Pembroke Lakes. Thus, it was proper to have the jury assign neghgence to Pembroke Lakes and Millard.
Conclusion
We affirm the trial court’s decision to apply section 768.0710 rather than section 768.0755, and we certify conflict with the Third District’s decision in Kenz. On remand, after the jurors are interviewed, the court should apply the De La Rosa test to determine whether a new trial is required. If a new trial is not required, or if McGru-der succeeds in a new trial, the court should impose liability against Pembroke Lakes for the negligence attributed to Millard. We affirm the other issues raised by Pembroke Lakes without comment.

Affirmed in part, reversed in part, and remanded; conflict certified.

STEVENSON and LEVINE, JJ., concur.

. Sections 768.0710 and 768.0755 relate to premises liability tort actions arising from slip and falls due to foreign transitory substances in business establishments. Section 768.0710(2)(b), Florida Statutes (2008), states ‘‘[ajctual or constructive notice of the transitory foreign object or substance is not a required element of proof to this claim.” Section 768.0755(1), Florida Statutes (2010), added a requirement that the “injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it.”

. We list the jurors’ first names only.

. "[A] remedial statute is one which confers or. changes a remedy; a remedy is the means employed in enforcing a right or in redressing an injury.” St. John's Village I, Ltd. v. Dep’t of State, Div. of Corps., 497 So.2d 990, 993 (Fla. 5th DCA 1986) (citation omitted).

. Rhonda’s prior litigation consisted of one suit from 1991, and this person was a defendant rather than a plaintiff. If the motion had only raised Rhonda's litigation history, we would have found that the trial court did not abuse its discretion by denying the motion. See Duong, 125 So.3d at 228.

. "Honesty is the heart of the jury-selection process in an adversarial system; indeed, 'voir dire’ means ‘to speak the truth.’ ” Fields v. Brown, 503 F.3d 755, 772 (9th Cir.2007).

. We repeat our observation that "[t]he time may have come to rethink how the courts handle juror non-disclosure so as to prevent so much litigation over the issue and so many retrials of cases to the detriment of the entire judicial system.” Hillsboro Mgmt., 112 So.3d at 625.