[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-12485
Non-Argument Calendar
_____

D.C. Docket No. 9:19-cv-81108-RLR


MARIA ESPINOZA,

                                                            Plaintiff-Appellant,

versus

TARGET CORPORATION,
JANE GREER,

                                                            Defendants-Appellees.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 19, 2021)

Before NEWSOM, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Maria Espinoza slipped and fell on a puddle of milk in a store owned by Target Corporation ("Target") and suffered serious injury.  Espinoza sued Target for negligence and argued that the puddle existed for long enough that Target should have known about the dangerous condition.  The district court disagreed and granted summary judgment to Target.  The central question in this appeal is whether the evidence supports an inference that Target had constructive notice of the puddle.  Espinoza cannot meet her burden to show that Target had such notice because she relies on a series of inferences that are supported only by speculation and conjecture.  Accordingly, we affirm.

## I.    Background

Espinoza was shopping at a Target store ("the store") in Boynton Beach, Florida.  She slipped on a puddle of milk in the stationery aisle, fell, struck her head on a shelf, and began bleeding from her head.

Several Target employees—including Roshel Baker, Debbie Bock, Diasmine Dameus, and Yoliswa Mbanyana—responded to the scene.  They found Espinoza lying on the ground in a puddle of white liquid.  Baker estimated that the puddle was approximately "two feet, three feet, maybe" in size.  Dameus described the puddle as "a pretty decent size spill."  They also saw blood on the floor.  Espinoza was conscious, moving, and talking.

2

Espinoza believed that the white liquid came from a "1-gallon container of milk" due to the size of the puddle.  After falling, she described her clothes as being "all wet" and the milk  as being "warm" to the touch.  As Bock, Dameus, and Mbanyana cleaned up the aisle, they also came to believe that the liquid was milk.

When they arrived at the scene, Baker and Bock did not see any footprints or cart tracks in the milk.  Other customers began to "hover[] over" Espinoza. Paramedics arrived, and soon "everybody was everywhere" around the scene. After Espinoza was removed by paramedics, Dameus took photographs of the scene.  From those photographs, Bock later identified at least one footprint in the puddle.[1]  Those photographs also documented a collection of bloody towels, paper towels, Elmer's glue, a box of gloves, and an envelope.

Upon hire, and on a yearly basis, Target trains its employees to keep a store clean and to ensure that nothing remains on the floor.  Employees are trained to keep an eye out for anything on the floor as they move about the store, and they are instructed to pick up items on the floor.[2]  When they see a liquid substance on the floor, Target employees are trained to remain in the area and page another

---

[1]  One of the paramedics who was present at the scene and later reviewed Dameus's photographs described the footprint as a "boot" mark.

[2]  Target employees have a saying: "[D]on't pass it up; pick it up[.]"  The saying is designed to "prevent an accident."

3

employee to clean up the spill.[3]  Target also assigns employees to monitor specific areas of a store, including the stationery aisle.

Nobody knows when the spill occurred in this case.  And nobody knows when the last Target employee walked down the stationery aisle prior to Espinoza's fall.[4]  However, Bock walked through the stationery department approximately 30–45 minutes before Espinoza fell and did not see any liquid on the floor at that time.

Espinoza sued Target, alleging negligence for failing to correct a dangerous condition in its store.[5]  After discovery, Target moved for summary judgment.  It argued that Espinoza could not show that Target had actual or constructive knowledge of the milk puddle that caused Espinoza's fall.  Espinoza opposed the motion and argued that Target had constructive notice of the puddle.  In her view, there was a genuine dispute of material fact because a jury could infer from Target's lack of an inspection policy, the temperature of the milk, the size of the puddle, and a footprint in the puddle that the puddle existed for a sufficient length of time to put Target on constructive notice of the dangerous condition.

---

[3] Spill stations with cleaning supplies are located throughout Target stores.

[4] Espinoza did not see anyone else in the area before her fall.

[5] Espinoza sued Target and Jane Greer (the manager of the store) in state court.  Target removed the case to the U.S. District Court for the Southern District of Florida.  The parties agreed to dismiss defendant Jane Greer without prejudice.

The district court granted summary judgment to Target. First, the district court dismissed Espinoza's claim that Target had no inspection policy as a "mischaracterization of the evidence." It relied on Florida caselaw to find that the fact that no inspection occurred in a given period of time cannot establish that the condition existed for a sufficient period of time to put Target on constructive notice of the condition. Second, the district court determined that the footprint in the milk did not support an inference that Target had constructive notice of the puddle because the photograph containing the footprint was taken after other customers and paramedics had swarmed the area. Third, the district court observed that Espinoza did not explain how the size of the puddle was probative of how long the puddle had been on the floor. And fourth, the district court determined that the temperature of the milk did not show that the puddle had been on the floor long enough to put Target on constructive notice. It reasoned that Espinoza: (1) provided no evidence concerning where the milk came from and how it came to be on the floor, and (2) failed to substantiate how "warm" the milk was or how long it would take refrigerated milk to reach a vague "warm" temperature. Thus, the district court concluded that there was no reasonable inference to support a finding of constructive knowledge based on the temperature of the milk because that inference would be "purely conjectural and speculative."

The district court granted final judgment to Target, and this appeal followed.

5

II.    Discussion

Espinoza's appeal boils down to two central arguments.  First, she contends that the district court erred when it failed to draw reasonable inferences in her favor that would raise a genuine dispute of material fact about whether Target had constructive notice of the dangerous condition.  Second, she argues that the district court erred by requiring her to shoulder the evidentiary burden of proving Target's constructive knowledge when Target is unable to identify the last employee to walk the stationery isle and whether that employee adhered to Target's inspection policy.

"We review a district court's grant of summary judgment de novo[.]" *Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313, 1317 (11th Cir. 2015).  We "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quotation omitted). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact' and the moving party is entitled to judgment as a matter of law." *Carlson*, 787 F.3d at 1317 (quoting Fed. R. Civ. P. 56(a)).

If the party moving for summary judgment shows the absence of a genuine dispute of material fact, the burden "shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond

6

the pleadings." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (quotation omitted). A self-serving and uncorroborated affidavit can create a genuine dispute of material fact. *United States v. Stein*, 881 F.3d 853, 858 (11th Cir. 2018). However, "[c]onclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Glasscox v. City of Argo*, 903 F.3d 1207, 1213 (11th Cir. 2018).

Under Florida law, a plaintiff alleging negligence must show four elements: "(1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff." *Encarnacion v. Lifemark Hosps. of Fla.*, 211 So. 3d 275, 277–78 (Fla. 3d Dist. Ct. App. 2017) (quotation omitted). Business owners owe invitees a duty: "(1) to take ordinary and reasonable care to keep its premises reasonably safe for invitees[,] and (2) to warn of perils that were known or should have been known to the owner and of which the invitee could not discover." *Norman v. DCI Biologicals Dunedin, LLC*, 301 So. 3d 425, 428 (Fla. 2d Dist. Ct. App. 2020) (quotation omitted).

"If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." Fla. Stat. § 768.0755(1). Espinoza does not contend that

7

Target had actual knowledge of the puddle, so our analysis focuses on the issue of constructive knowledge. Relevant here, an injured person may prove constructive knowledge by presenting circumstantial evidence showing that the "dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition."[6] *Id.* § 768.0755(1)(a). The mere presence of a liquid on the floor is insufficient to establish constructive knowledge. *Delgado v. Laundromax*, Inc., 65 So. 3d 1087, 1090 (Fla. 3d Dist. Ct. App. 2011). If a plaintiff does not identify evidence to suggest the length of time that a liquid was on the floor, there is no genuine dispute of material fact, and a defendant is entitled to summary judgment. *See, e.g.*, *Oliver v. Winn-Dixie Stores, Inc.*, 291 So. 3d 126, 129–30 (Fla. 4th Dist. Ct. App. 2020) ("No facts suggest the grape and surrounding liquid were on the ground for enough time to impute constructive knowledge to Winn-Dixie."); *Lago v. Costco Wholesale Corp.*, 233 So. 3d 1248, 1252 (Fla. 3d Dist. Ct. App. 2017) (affirming the grant of summary judgment when the plaintiff "testified that . . . she didn't know how long [the liquid] had been there"); *Encarnacion v. Lifemark Hosps. of Fla.*, 211 So. 3d 275, 278 (Fla. 3d Dist. Ct. App. 2017) (affirming the grant of summary judgment because "the answers to interrogatories and depositions do not

---

[6] An injured person may also prove constructive knowledge when a "condition occurred with regularity and was therefore foreseeable." Fla. Stat. § 768.0755(1)(b). Espinoza does not an argument based on foreseeability here.

8

establish how long the substance had been on the floor"); *Miller v. Big C Trading, Inc.*, 641 So. 2d 911, 912 (Fla. 3d Dist. Ct. App. 1994) (affirming the grant of summary judgment when there was "no indication as to how long the grape was there").

### A.     Inferences concerning constructive knowledge

Espinoza contends that the district court erred when it concluded that Espinoza's assortment of inferences did not create a genuine dispute of material fact about whether Target had constructive notice of the dangerous condition. According to Espinoza, the district court improperly construed the evidence in Target's favor. We disagree. Espinoza has not identified evidence to suggest how long the milk was on the floor. Accordingly, she has not met her burden to show that the milk was on the floor for such a length of time to put Target on constructive notice of the dangerous condition.

Espinoza maintains that her declaration and deposition testimony establish several key facts: (1) Bock was the last known Target employee to walk down the stationery aisle, approximately 30–45 minutes before the fall; (2) the spill was large; (3) the milk container came from a refrigerator in the store; (4) the milk was cold when it was spilled; and (5) the milk was "warm" when Espinoza fell. She believes these facts support a reasonable inference that the milk was puddled on the floor long enough to put Target on constructive notice of a dangerous

9

condition.  Thus, she argues that there is a genuine dispute of material fact about Target's constructive knowledge, and the district court should not have granted summary judgment to Target.  We disagree.

First, "the fact there was no inspection for a given length of time in itself provides no proof that the defect was actually there for a sufficient period to place a landowner on reasonable notice of its existence." *Wal-Mart Stores, Inc. v. King*, 592 So. 2d 705, 707 (Fla. 5th Dist. Ct. App. 1991).  Bock was the last known Target employee to walk down the stationery aisle, 30–45 minutes before Espinoza's fall, and she did not see any spill.  The spill could have occurred moments after Bock left the aisle, moments before Espinoza fell, or any time in between.  Espinoza can only speculate when the spill occurred.  But "speculation [is] insufficient to create a genuine issue of material fact." *Glasscox*, 903 F.3d at 1213.

Second, we agree with the district court that Espinoza has not explained how the size of the puddle was probative of how long the puddle had been on the floor. There is no evidence as to the specific source of the leak, which would tend to show how long a dangerous condition was present. *See, e.g.*, *Erickson v. Carnival Cruise Lines, Inc.*, 649 So. 2d 942, 942–43 (Fla. 3d Dist. Ct. App. 1995) (finding that a "water leak from the ceiling which had trickled down the wall and onto the floor" and accumulated into "a clear puddle of water approximately three to five

10

feet in diameter" created a genuine dispute of material fact about whether the defendant was on constructive notice of the condition).

Third, we agree with the district court that Espinoza "points to no specific facts to support her inference that the milk was cold at the time that it was spilled on the floor." Espinoza's declaration stated that: (1) "due to the size of the puddle of milk" it "came from a 1-gallon container of milk[,]" (2) "all 1-gallon containers of milk are . . . found in the refrigerated section" of the store, and (3) "the 1-gallon container of milk" was "cold" when it was spilled. But the declaration provides no specific facts to support the claim that the milk was cold when it was spilled. Espinoza did not know how long the milk had been outside of the refrigerator, witness the milk being spilled, or feel the temperature of the milk when it was spilled. Espinoza also relies on Dameus's deposition testimony that milk was stocked in the refrigerated section of the store. But that testimony tells us nothing about the temperature of the milk when it was spilled. In short, Espinoza's claim that the milk was "cold" when it was spilled is speculation and conjecture that cannot support an inference that the puddle was on the floor long enough to put Target on notice of the dangerous condition. *See Glasscox*, 903 F.3d at 1213 ("[S]peculation [is] insufficient to create a genuine issue of material fact."); *see*

11

*also Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1301 (11th Cir. 2012)

("[I]nferences based upon speculation are not reasonable[.]" (quotation omitted)).[7]

Fourth, and relatedly, Espinoza's claim that the milk was "warm" to the touch does not support an inference that the puddle was on the floor long enough to put Target on constructive notice. Espinoza's description of the temperature of the milk is vague. And she provides no explanation as to how long it takes for refrigerated milk to reach this imprecise "warm" temperature. Once again, a jury could only speculate about how long the milk had been on the floor. Although we are required to draw all reasonable inferences in Espinoza's favor, "an inference based on speculation and conjecture is not reasonable." *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) (quotation omitted).

In sum, Espinoza has not presented evidence that would support a reasonable inference that the puddle was on the floor for such length of time to put Target on constructive notice of the dangerous condition. A jury could only speculate as to how long the puddle was on the floor. But speculation cannot create a genuine dispute of material fact to defeat summary judgment.[8]

---

[7] Contrary to Espinoza's suggestion, the district court did not ignore her affidavit. As we explained, the district court gave a sound basis for rejecting any inference that the milk was cold when it was spilled.

[8] Espinoza also argues that the district court erred when it rejected an inference that the milk container originated from the store. However, this inference is irrelevant. Even if we assume that the milk container was from the refrigerated section of the store, that inference alone cannot create a genuine dispute of material fact about how long the puddle was on the floor.

B.      The burden of proof in constructive knowledge cases

Espinoza argues that the district court should have construed the lack of evidence concerning whether Target was on constructive notice in her favor. Specifically, she faults Target for failing to identify the employee assigned to the stationery aisle at the time of the accident and for failing to show that the employee adhered to Target's inspection policy.  We disagree.

Espinoza does not dispute that she bore the burden of rebutting Target's showing that there was no genuine dispute of material fact concerning its constructive knowledge.  *See Jones*, 683 F.3d at 1292.  And Espinoza even concedes that under Florida law she bears the burden of proof in constructive knowledge cases.  *See* Fla. Stat. § 768.0755(1) ("[T]he injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it.").

Instead, Espinoza argues that under *Owens v. Publix Supermarkets, Inc.*, 802 So. 2d 315 (Fla. 2001), she may rely on the lack of evidence concerning Target's adherence to its inspection policy as evidence of constructive knowledge.  In *Owens*, the Supreme Court of Florida shifted the burden of proof in constructive knowledge cases involving transitory substances from an injured plaintiff to a premises owner.  *Id.* at 330–31.  It held that "once the plaintiff establishes that he or she fell as a result of a transitory foreign substance, a rebuttable presumption of

13

negligence arises." *Id.* at 331.  But as Espinoza acknowledges, the Florida legislature "eliminated that rebuttable presumption" a year later when it passed Fla. Stat. § 768.0710—the predecessor statute to § 768.0755.[9] *Norman*, 301 So. 3d at 429.

Nevertheless, Espinoza maintains that these statutory changes do not bar a plaintiff from relying on the lack of evidence concerning adherence to inspection policies to show constructive knowledge.  Espinoza misunderstands the significance of the statutory change.  *Owens* shifted the burden of proof to the premises owner because the court believed it would "prevent premises owners or operators from benefitting from their absence of record-keeping and it will increase the incentive for them to take protective measures to prevent foreseeable risks." 802 So. 2d at 331.  In other words, *Owens* was based on the same evidentiary disparity that Espinoza complains of here.  But the Florida legislature reversed the Supreme Court of Florida's policy choice when it returned the evidentiary burden to injured plaintiffs.  If we were to accept Espinoza's argument and construe the lack of evidence against Target, we would be shifting the burden of proof back to

---

[9]  Section 768.0710 shifted the burden of proof back to plaintiffs, but it expressly stated that "[a]ctual or constructive notice of the transitory foreign object or substance is not a required element of proof to this claim."  Fla. Stat. § 768.0710(2)(b).  In 2010, the Florida legislature passed the current version of the statute, which made actual or constructive knowledge a required element to prove a negligence claim in the context of transitory substances.  *See* Fla. Stat. § 768.0755(1) ("[T]he injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition."); *Pembroke Lakes Mall Ltd. v. McGruder*, 137 So. 3d 418, 424 (Fla. 4th Dist. Ct. App. 2014) (explaining this development).

Target to avoid liability, in violation of the clear command of § 768.0755. We cannot and will not rewrite Florida negligence law. For better or for worse, the burden remains on Espinoza to "prove[] by circumstantial evidence" that "the business establishment had . . . constructive knowledge of the dangerous condition and should have taken action to remedy it." Fla. Stat. § 768.0755(1). The fact that Target does not know the name of the employee assigned to the stationery aisle when Espinoza's fall occurred—or whether that employee followed Target's inspection policy—cannot be construed as evidence of Target's constructive knowledge of the dangerous condition.[10]

\* \* \*

Espinoza has not met her burden to show that there is a genuine dispute of material fact about whether Target was on constructive notice of the milk puddle. For these reasons, we affirm the district court's judgment.

**AFFIRMED.**

---

[10] In any event, such an endeavor would be fruitless. Even if we did construe these facts against Target, there is no reasonable inference to be drawn about when the spill occurred and whether the puddle existed long enough to put Target on constructive notice of the dangerous condition.